IN THE SUPREME COURT
OF THE VIRGIN ISLANDS
**FILED**
December 18, 2025 04:18 PM
SCT-Civ-2024-0003
DALILA E. PATTON, ESQUIRE
ACTING CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| ERBEY HOLDING CORPORATION, JOHN R. ERBEY FAMILY LIMITED PARTNERSHIP, by its General Partner JUPITER CAPITAL, INC., SALT POND HOLDINGS, LLC, MUNUS, L.P., CARISMA TRUST, by its Trustee VENIA, LLC, TRIBUE LIMITED PARTNERSHIP, and ALTISOURCE ASSET MANAGEMENT CORPORATION,<br>    Appellants/Plaintiffs,<br><br>v.<br><br>BLACKROCK FINANCIAL MANAGEMENT, INC., BLACKROCK INVESTMENT MANAGEMENT, LLC, BLACKROCK INVESTMENTS, LLC, BLACKROCK CAPITAL MANAGEMENT, INC., BLACKROCK, INC., PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, PIMCO INVESTMENTS LLC, and JOHN AND JANE DOES 1-10,<br>    Appellees/Defendants. | **S. Ct. Civ. No. 2024-0003**<br>Re: Super. Ct. Civ. No. 146/2018 (STX) |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. Harold W.L. Willocks

Considered: July 15, 2024
Filed: December 18, 2025

Cite as 2025 VI 25

BEFORE: **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice; and **IVE ARLINGTON SWAN**, Associate Justice.

APPEARANCES:

**Joel H. Holt, Esq.**
Law Office of Joel H. Holt, P.C.
St. Croix, U.S.V.I.

**Nicholas Cutaia, Esq.**
**Charles R. Jacob III, Esq.**
**Adam J. Safer, Esq.**
**Isabel P. Sukholitsky, Esq.**
**Kiman Kaur, Esq.**
Goulston & Storrs PC
New York, NY
     *Attorneys for Appellants,*

**Maria T. Hodge, Esq.**
Hodge & Hodge
St. Thomas, U.S.V.I.
     *Attorney for Appellees BlackRock Financial Management, Inc., BlackRock Investment Management, LLC, BlackRock Investments, LLC, BlackRock Capital Management, Inc., and BlackRock, Inc.*[1]

## OPINION OF THE COURT

**HODGE, Chief Justice.**

¶ 1     The Erbey Holding Corporation, the John R. Erbey Family Limited Partnership, Salt Pond Holdings, LLC, Munus, L.P., Carisma Trust, Tribue Limited Partnership, and Altisource Asset Management Corporation (collectively "the Plaintiffs") appeal from the Superior Court's December 4, 2023 opinion and order dismissing their claims against BlackRock, Inc., for lack of personal jurisdiction and designating that dismissal as a final judgment pursuant to Rule 54(b) of the Virgin Islands Rules of Civil Procedure. For the reasons that follow, we reverse the Civil Rule 54(b) designation but nevertheless permit this appeal to proceed under the collateral order doctrine, and, with respect to the merits, reverse the portion of the December 4, 2023 opinion and order dismissing the Plaintiffs' claims against BlackRock, Inc. on personal jurisdiction grounds.

### I. BACKGROUND

---

[1] While identified as appellees in the case caption, Pacific Investment Management Company LLC, PIMCO Investments LLC, Altisource Asset Management Corporation, and John and Jane Does 1-10 have not entered an appearance or filed an appellate brief in this matter.

¶ 2    On April 12, 2018, the Plaintiffs filed a complaint in the Superior Court against BlackRock Financial Management, Inc., BlackRock Investment Management, LLC, BlackRock Investments, LLC, BlackRock Capital Management, Inc., BlackRock, Inc., Pacific Investment Management Company LLC, PIMCO Investments LLC, Altisource Asset Management Corporation, and John and Jane Does 1-10 (collectively "the Defendants"). In their complaint, the Plaintiffs sued the Defendants for civil violations of the Virgin Islands Criminally Influenced and Corrupt Organizations ("CICO") Act, 14 V.I.C. § 600 et seq., as well as numerous common-law causes of action such as tortious interference with contract. Specifically, the Plaintiffs alleged in their complaint that the Defendants engaged in a "concerted campaign of lies and vilification" designed to cause the Plaintiffs to lose significant portions of their mortgage and real estate management businesses.

¶ 3    Pacific Investment Management Company LLC, and PIMCO Investments LLC (collectively the "PIMCO Defendants") filed a motion to dismiss on July 18, 2018, which raised numerous defenses, including lack of personal jurisdiction.  On August 28, 2018, BlackRock Financial Management, Inc., BlackRock Investment Management, LLC, BlackRock Investments, LLC, BlackRock Capital Management, Inc., and BlackRock, Inc. (collectively the "BlackRock Defendants") likewise filed a motion to dismiss for lack of personal jurisdiction and other grounds.

¶ 4    After numerous proceedings not related to this appeal, the Superior Court referred the Defendants' motions to dismiss to the Staff Master assigned to the Complex Litigation Division.[2]

---

[2] Rule 95 of the Virgin Islands Rules of Civil Procedure authorizes the appointment of a master to assist with any cases pending in the Complex Litigation Division, with such master to possess powers and authority not to exceed those of the masters authorized by Rule 53 of Virgin Islands Rules of Civil Procedure.  In an August 12, 2021 administrative order, the Chief Justice authorized the Presiding Judge of the Superior Court to appoint a full-time court employee—the "Staff Master"—to serve as a master in all cases pending in the Complex Litigation Division unless such

The Staff Master issued a 132-page recommendation on July 13, 2023, which, amongst other things, recommended that the Superior Court (1) grant the motion to dismiss for lack of personal jurisdiction as to BlackRock, Inc., but deny it as to BlackRock Financial Management, Inc., BlackRock Investment Management, LLC, BlackRock Investments, LLC, BlackRock Capital Management, Inc. (collectively the "BlackRock Affiliates") solely on the basis of consent pursuant to the recent decision of the Supreme Court of the United States in *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023); and (2) certify the dismissal of BlackRock, Inc. as a final judgment pursuant to Rule 54(b) of the Virgin Islands Rules of Civil Procedure.

¶ 5     On August 28, 2023, the Plaintiffs and the Defendants filed separate motions asking the Superior Court to adopt or modify portions of the July 13, 2023 recommendation.  As relevant to this appeal, the Plaintiffs urged the Superior Court to hold that it possesses personal jurisdiction over BlackRock, Inc., that it could exercise personal jurisdiction over all defendants for reasons other than consent, and alternatively that it should not certify the dismissal of BlackRock, Inc. as a final judgment under Civil Rule 54(b).  The Defendants, in contrast, asserted that the Superior Court should dismiss all claims against all defendants for lack of personal jurisdiction, should certify the dismissal of BlackRock, Inc. as final under Civil Rule 54(b), and certify the question of whether any of the Defendants consented to personal jurisdiction under *Mallory* to this Court for immediate interlocutory review pursuant to title 4, section 33(c) of the Virgin Islands Code.

¶ 6     The Superior Court issued an opinion and order on December 4, 2023, that adopted all portions of the July 13, 2023 recommendation relevant to this appeal. *Erbey Holding Corp. v.*

responsibilities are expressly rescinded or reduced in a particular case. *See In re Authorization of Staff Master*, S. Ct. Admin. 2021-0012, 2021 WL 3562551 (V.I. Aug. 12, 2021). Among the duties of the Staff Master is the authority to "[m]ake or recommend findings of facts and conclusions of law on dispositive motions." *Id.* at *2.

*BlackRock Fin. Mgmt, Inc.*, 2023 VI Super 75.  Specifically, the Superior Court agreed with the Staff Master that the *Mallory* decision required a finding that the BlackRock Affiliates and the PIMCO Defendants had consented to personal jurisdiction, and likewise agreed that there was a basis to exercise personal jurisdiction over BlackRock, Inc.  The Superior Court likewise certified the dismissal of BlackRock, Inc. as a final judgment pursuant to Civil Rule 54(b) and certified all personal jurisdiction questions for immediate interlocutory appeal pursuant to section 33(c).  The Defendants responded by filing a petition for permission to appeal pursuant to section 33(c) on December 14, 2023, which this Court docketed as S. Ct. Civ. No. 2023-0123 and which remains pending.  Shortly thereafter, the Plaintiffs filed a notice of appeal with this Court on January 2, 2024, which this Court docketed as S. Ct. Civ. No. 2024-0003 and which has become fully briefed.

## II. DISCUSSION

### A.  Appellate Jurisdiction

¶ 7      "This Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." 4 V.I.C. § 32(a); *see also* 48 U.S.C. § 1613a(d). Because the Plaintiffs' claims against all the Defendants besides BlackRock, Inc. remain pending in the Superior Court, the Superior Court's December 4, 2023 opinion and order does not constitute a traditional final judgment. *Davis v. Allied Mortg. Capital Corp.*, 53 V.I. 490, 498 (V.I. 2010). Nevertheless, the Superior Court certified the December 4, 2023 opinion and order as final pursuant to Rule 54(b) of the Virgin Islands Rules of Civil Procedure, which provides that

> [w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before entry of a judgment adjudicating all the

claims and all the parties' rights and liabilities.

But while a certification under Civil Rule 54(b) may "inform our consideration of whether the order qualifies as a final judgment under section 32," it is ultimately "not binding on this Court," with this Court possessing the ultimate authority to determine whether an order actually qualifies as an appealable final judgment. *See Donastorg v. Daily News Publishing Co., Inc*., 2022 VI 1U, ¶ 6 (citing *Stiles v. Yob*, S. Ct. Civ. No. 2016-0027, 2016 WL 3211244 (V.I. June 8, 2016) (unpublished)).

### 1. Challenge to Jurisdiction by the Plaintiffs

¶ 8    The Plaintiffs, for their first issue on appeal, contend that this Court lacks jurisdiction over this appeal—*an appeal that the Plaintiffs themselves initiated*—because the Superior Court erred in certifying the December 4, 2023 opinion and order as final pursuant to Civil Rule 54(b). That the Plaintiffs brought this appeal yet simultaneously assert that this Court lacks jurisdiction over it appears extraordinarily problematic, at least at first glance. After all, Rule 211.3.1 of the Virgin Islands Rules of Professional Conduct provides that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous," and the Plaintiffs literally devote the first issue of their own brief to outlining the reasons why this Court should not entertain the proceeding *they chose to initiate* (and could move to withdraw at any time for any reason).

¶ 9    Nevertheless, while extraordinarily unusual, this constitutes the very rare case where a party may ethically and permissibly initiate an appeal with this Court and then argue that this Court should dismiss its own appeal. While the December 4, 2023 opinion and order certifying the dismissal of BlackRock, Inc. as a final judgment pursuant to Civil Rule 54(b) appears at first glance to benefit the Plaintiffs by providing them with an opportunity to obtain immediate review, the

Plaintiffs opposed such certification in the Superior Court proceedings and express a strong preference to avoid piecemeal litigation and instead desire to "facilitate review of all issues on a single appeal." (Appellant's Br. 17.)

¶ 10    Importantly, the Plaintiffs do not possess the option to simply choose not to appeal from the December 4, 2023 opinion and order and instead appeal the dismissal of claims against BlackRock, Inc. at a later date. As this Court previously explained, "prior interlocutory orders merge with the final judgment in a case, and the interlocutory orders . . . may be reviewed on appeal from the final order" due to the "merger rule" adopted by this Court, in which it may "review[] orders other than the actual final judgment" after entry of the final judgment. *In re Estate of George*, 59 V.I. 913, 919 (V.I. 2013) (quoting *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 706 (3d Cir. 1996)). But this exception would no longer apply if the Superior Court correctly certified the December 4, 2023 opinion and order as a final judgment for the obvious reason that it is no longer a mere interlocutory order. As this Court explained in the context of a divorce case in which the Superior Court entered multiple final judgments,

> the fact that the Superior Court issued a divorce decree yet expressly retained jurisdiction to distribute the parties' marital assets at a later date should not give the Superior Court *carte blanche* to reopen other issues pertaining to the parties' divorce, such as alimony. It is certainly true that an interlocutory order remains open for reconsideration by the trial court. But as explained earlier, a divorce decree—even one that does not resolve every outstanding issue between the parties—is not an interlocutory order, but a final order, and thus is not subject to plenary modification, but like other final judgments may only be altered in certain specifically enumerated circumstances.

*Evans-Freke v. Evans-Freke*, 2023 VI 12, ¶ 27 (citations omitted). Significantly, numerous courts have construed their jurisdictions' equivalents of Civil Rule 54(b) to hold that a party who fails to timely appeal from an order certified as final cannot simply obtain appellate review of the previously certified order by later appealing from the "true" final judgment. *See, e.g., Johnson v.*

*Ocwen Loan Servicing, LLC,* 916 F.3d 505, 508 (5th Cir. 2019) ("Johnson's appeal focuses on the federal claims that were dismissed in that Rule 54(b) judgment. That partial final judgment started its own clock for filing a notice of appeal. Because Johnson filed her notice more than thirty days after entry of the Rule 54(b) judgment dismissing the Real Estate Settlement Procedures Act claims, her appeal of those rulings is untimely.") (citations omitted); *Colorado Community Bank v. Hoffman*, 338 P.3d 390, 396 (Colo. Ct. App. 2013) (holding that an appellate court lacks authority to review orders that had been certified as final but not appealed until after entry of a later final judgment resolving all remaining claims); *Wallace v. Belleview Properties Corp*., 120 So.3d 485, 489-91 (Ala. 2012) (same). As such, while unusual, the only means for the Plaintiffs to obtain their desired relief—a single appeal after one final judgment—without potentially waiving their right to have the merits reviewed is to do what they have done: initiate the appeal authorized by the Civil Rule 54(b) certification and then urge the appellate court to dismiss the appeal because the certification was improper. *See, e.g., McIntyre v. First Nat'l Bank of Cincinnati,* 585 F.2d 190, 191 (6th Cir. 1978) (permitting appellants to move to dismiss their own appeal on grounds that Rule 54(b) certification was improper); *Mallin v. Farmers Ins. Exchange*, 797 P.2d 978, 980 (Nev. 1990) (same).

2. Propriety of Certification Under Civil Rule 54(b)

¶ 11    The Plaintiffs assert that the Superior Court erred by certifying the December 4, 2023 opinion and order as final pursuant to Civil Rule 54(b) and that this Court should accordingly vacate the certification and dismiss the appeal. Plaintiffs contend that the Superior Court failed to articulate any reasons—let alone valid reasons—for certification, and that in any event the traditional factors courts consider when determining whether to certify an order as final do not support certification.

¶ 12    We agree that the Superior Court's treatment of the certification issue is—at best—highly problematic.  As previously noted, the plain text of Civil Rule 54(b) provides that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties <u>only if the court expressly determines that there is no just reason for delay</u>." (emphasis added).  This language is word-for-word identical to Rule 54(b) of the Federal Rules of Civil Procedure, upon which this Court modeled Virgin Islands Civil Rule 54(b).  As the Plaintiffs correctly recognize in their brief, the federal appellate courts applying Federal Rule 54(b) have consistently held that the complete failure of the trial court to conduct any analysis with respect to the "just reason for delay" or any other potentially relevant factor requires vacatur of the certification and dismissal of the appeal for lack of appellate jurisdiction.  *See, e.g., Adler v. Elk Glenn, LLC,* 758 F.3d 737, 738-39 (6th Cir. 2014) ("The district court's only reason supporting immediate appeal was the 'real prejudice' Kentucky Farm Bureau would suffer. This reference, without further explication, does not provide reasoning supporting the necessity of immediate review" under Federal Rule 54(b).); *Elliott v. Archdiocese of N.Y.,* 682 F.3d 213, 221 (3d Cir. 2012) ("[W]here an order purports to certify a judgment as final under Rule 54(b) but lacks the express determination that the rule requires, a court of appeals lacks jurisdiction over the order because it is not a 'final' judgment under either Rule 54(b) or under the traditional standards of [finality]."); *Stockman's Water Co., LLC v. Vaca Partners, L.P.*, 425 F.3d 1263, 1265-66 (10th Cir. 2005).  And this Court recently adopted the same construction of Civil Rule 54(b), holding that a certification order which "only parrot[s] the text of the rule" without any analysis is insufficient. *Castillo v. St. Croix Basic Services, Inc.*, 2025 VI 1, ¶ 21.

¶ 13    Here, the Superior Court provided no reasons for certifying the dismissal of BlackRock, Inc. as a final judgment under Civil Rule 54(b). The December 4, 2023 order entered by the

Superior Court states, in its entirety, as follows:

> **AND NOW,** for the reasons stated in the accompanying Memorandum Opinion, the Court expressly **DETERMINES** that there is no just reason for delay and, therefore, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that all claims of Plaintiffs Erbey Holding Corporation, John R. Erbey Family Limited Partnership, Salt Pond Holdings, LLC, Munus, L.P., Carisma Trust, Tribue Limited Partnership, and Altisource Asset Management Corporation are **DISMISSED** as to Defendant BlackRock, Inc. for lack of personal jurisdiction and further, that this dismissal is **FINAL** pursuant to Rule 54(b) of the Virgin Islands Rules of Civil Procedure.

However, the December 4, 2023 opinion that the order references does not even mention certifying the dismissal of BlackRock, Inc. as a final judgment under Civil Rule 54(b)—other than to simply note that the Staff Master had recommended it—let alone provide any explanation for why the Superior Court believes "that there is no just reason for delay." Moreover, this Court cannot simply assume that the Superior Court simply agreed with the Staff Master's reasons for recommending certification, because the Staff Master's recommendation itself engaged in no analysis; the portion of the July 13, 2023 recommendation pertaining to certification reads, in its entirety, as follows:

> Seventh, assuming the Court agrees with the undersigned's analysis, whether in whole or in part, and dismisses BlackRock for lack of personal jurisdiction, the Court should also certify the dismissal as final pursuant to Rule 54(b) of the Virgin Islands Rules of Civil Procedure. *Cf. Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.,* 512 So. 2d 897, 900 (Miss. 1987) ("In complex litigation involving multiple claims or multiple parties, or both, Rule 54(b) is helpful because it allows judges to efficiently and fairly resolve separable claims before protracted litigation is finally resolved.").

But the fact that some courts find Civil Rule 54(b) "helpful" in complex litigation cases obviously does not constitute a legitimate reason for why certification of *this particular order* is warranted. Nor can this Court proceed as if the Staff Master simply adopted arguments made by one or more parties, since the record reflects that none of the parties even requested certification under Civil Rule 54(b); rather, the Staff Master acted unilaterally and *sua sponte* in making that

recommendation.[3]  In other words, the Superior Court at best made no express findings to support its determination "that there is no just reason for delay," and at worst issued the Civil Rule 54(b) certification for no reason other than that the Staff Master recommended it despite the Staff Master also not articulating any reason for doing so.[4]

¶ 14     In their appellate brief, the Defendants make no attempt to justify the Superior Court's lack

---

[3] That the Staff Master recommended certification under Civil Rule 54(b) *sua sponte* is especially problematic because the Staff Master is not a judicial officer but rather a judicial adjunct whose authority cannot ever exceed the parameters of the pertinent court rules or orders.  Civil Rule 95, which authorizes appointment of a master in all cases assigned to the Complex Litigation Division, states that such master "shall have the powers and authority specified in the order of appointment, consistent with V.I. R. CIV. P. 53."  The order of appointment for the Staff Master is the August 12, 2021 administrative order entered by the Chief Justice, which expressly vests the Staff Master with broad yet nevertheless limited powers.  While the Staff Master may "[m]ake or recommend findings of facts and conclusions of law <u>on dispositive motion[s],</u>" "[o]versee <u>the management</u> of the complex litigation cases," and "[c]onduct legal analysis <u>of parties' motions</u> or other submissions," *In re Authorization of Staff Master*, 2021 WL 3562551, at *1-2 (emphases added), neither the administrative order nor the Civil Rules it implements contemplates that the Staff Master will *sua sponte* assert substantive legal claims not made by the parties in those motions, or attempt to manage or direct what cases the Supreme Court should hear on appeal. Thus, it appears the Staff Master exceeded his authority in making this recommendation.

[4] In its December 4, 2023 opinion, the Superior Court provided seemingly contradictory language as to whether or not it deferred to the Staff Master or considered the matters in the Staff Master's recommendation *de novo*.  At times, the Superior Court correctly states that it must review all the Staff Master's findings of fact and conclusions of law *de novo*. *See, e.g., Erbey*, 2023 VI Super 75, ¶ 14. However, at other times in the same discussion, the Superior Court states that "[j]udges reviewing orders and recommendations of masters exercise a quasi-appellate role," that judges "may not disturb the master's findings simply because of dissatisfaction or disagreement with the findings of the master," that "clear error is the applicable legal standard for reviewing an order or recommendation of a master no one objected to," and that "the Court does not believe a 'do-over' as such is required, even when objections are raised." *Id.* at ¶¶ 13-15.

While the Staff Master has been given broad authority by virtue of the August 12, 2021 administrative order, including the power to "[m]ake or recommend findings of facts and conclusions of law on dispositive motion" and "[c]onduct legal analysis of parties' motions or other submissions," 2021 WL 3562551, at *1-2, these are only relatively small portions of the Staff Master's duties.  The Staff Master is not intended to be—and in fact *cannot be*—a substitute for a judge or a magistrate judge. *See Stauble v. Warrob, Inc.*, 977 F.2d 690, 695-96 (1st Cir. 1992) (emphasizing the need for independent judicial review of determinations made by a special master who is not a judge).

of meaningful analysis under Civil Rule 54(b). Nevertheless, they maintain that this Court should look beyond the plain text of the December 4, 2023 opinion and order and affirm the certification because (1) the Plaintiffs purportedly waived their arguments against certification; and (2) this Court should review the certification decision under a deferential abuse of discretion standard under which it examines the record to determine if factors exist to support the Superior Court's ultimate decision to invoke Civil Rule 54(b).

¶ 15    All the Defendants' arguments lack merit. It is a bedrock principle of our justice system that "subject-matter jurisdiction may never be waived," *Edward v. GEC, LLC*, 67 V.I. 745, 753 (V.I. 2017), and the Defendants cite to no case law to support their attempt to create an exception to that well-established rule in the certification context—nor could they, since this Court and other appellate courts have universally reached the opposite conclusion. *See, e.g., Castillo,* 2025 VI 1, ¶ 18; *Lowery v. Federal Exp. Corp*., 426 F.3d 817, 820 (6th Cir. 2005) ("Although defendants have not challenged the Rule 54(b) certification, this court is without appellate jurisdiction if the certification was improper. For this reason, we are compelled to consider whether the entry of final judgment was appropriate in this case."); *Ebrahimi v. City of Huntsville Bd. of Educ*., 114 F.3d 162, 165 (11th Cir. 1997) ("Although neither party raised the issue in its brief, we consider the propriety of Rule 54(b) certification *sua sponte* because such certifications implicate the scope of our appellate jurisdiction."); *Braswell Shipyards, Inc. v. Beazer East, Inc*., 2 F.3d 1331, 1336 (4th Cir. 1993) ("[B]ecause it involves the scope of our appellate jurisdiction, we are compelled to raise *sua sponte* the issue of whether the district court's entry of final judgment was warranted under Rule 54(b). If the entry of final judgment was unwarranted, we must dismiss the appeal."); *Pifer v. McDermott*, 816 N.W.2d 88, 92 (N.D. 2012) (holding that the trial court's certification under Rule 54(b) may be reviewed by the appellate court *sua sponte*). And even if this Court were

inclined to apply waiver principles to this question, the record reflects that the Plaintiffs *did* in fact oppose certification in their August 28, 2023 motion to modify the Staff Master's recommendation.[5]

¶ 16  The Defendants also err to the extent they propose that this Court independently scour the record to determine whether the Superior Court could have properly certified its December 4, 2023 opinion and order despite its failure to conduct any meaningful analysis under Civil Rule 54(b). But "it is not the role of appellate courts to scour the record to determine if sufficient evidence exists to support the [trial] court's exercise of its discretion." *State v. Wigham*, 967 N.W.2d 657, 665 n.6 (Minn. 2021) (quoting *State v. Modtland*, 695 N.W.2d 602, 608 (Minn. 2005)) (citations omitted).  This is because deferential standards of review like abuse of discretion presuppose that "[trial] court judges will create thorough, fact-specific records setting forth their reasons" so as to justify appellate courts deferring to their judgment in the first place.  *Modtland*, 695 N.W.2d at 608.  Accordingly, we reverse the Superior Court's designation of the December 4, 2023 order as final under Civil Rule 54(b).

### 3.  Jurisdiction Under Collateral Order Doctrine

¶ 17  That the Superior Court improperly certified the December 4, 2023 opinion and order as a final judgment with respect to its dismissal of BlackRock, Inc. does not automatically require that this Court dismiss this appeal. Although this issue was not raised in the briefing by any of the parties, this portion of the December 4, 2023 opinion and order nevertheless qualifies for

---

[5] The Defendants also assert that the Plaintiffs purportedly waived their objection because they never filed a motion for reconsideration after the Superior Court issued its December 4, 2023 opinion and order.  Even if waiver principles were applicable to this jurisdictional issue, this Court has already held that an appellant is "under no obligation to file a motion to reconsider . . . in order to preserve [an] issue for review." *James v. O'Reilly*, 70 V.I. 990, 1000 n.6 (V.I. 2019).

immediate appeal under the collateral order doctrine. As this Court previously explained,

> This judicially-created exception to the final judgment rule applies to a small class of prejudgment orders which finally determine claims of right separable from, and collateral to, rights asserted in the action, and are too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. To fall within the exception, an order must conclusively determine the disputed question; resolve an important issue completely separate from the merits of the action; and must be effectively unreviewable on appeal from a final judgment.

*In re Holcombe*, 63 V.I. 800, 815 (V.I. 2015) (internal citations and quotation marks omitted).

¶ 18    The three collateral-order factors are easily satisfied in this case. Whether the Superior Court may properly exercise personal jurisdiction over BlackRock, Inc. is a question entirely separate and collateral from the merits of the Plaintiffs' causes of action. The primary issue implicated—whether consent to personal jurisdiction may be imputed from a corporate affiliate to the controlling corporation—is also important and are extraordinarily likely to become unreviewable after final judgment since it is an issue likely to come up only in multi-defendant complex litigation cases where there is a high likelihood that the case will eventually settle or resolve on other grounds when the case proceeds against the consenting affiliates after the controlling corporation has been dismissed for lack of personal jurisdiction. Importantly, once this Court *actually* resolves the issue in this appeal, the collateral order doctrine would no longer authorize automatic appeals of such non-final dismissals in future cases, since this Court would have already resolved the issue. Thus, we exercise our discretion to entertain this appeal under the collateral order doctrine, for the sole purpose of eliminating any uncertainty with respect to this important issue.

**B. Personal Jurisdiction**

¶ 19    The Plaintiffs contend that, if this Court were to accept jurisdiction over this appeal, it should conclude that the Superior Court erred in dismissing their claims against BlackRock, Inc. for lack of personal jurisdiction.  Just as they did in the proceedings below, the Plaintiffs assert that the Superior Court may exercise personal jurisdiction pursuant to three independent bases: consent, the Virgin Islands long-arm statute, and the CICO statute.

¶ 20    With respect to consent, Plaintiffs primarily contend that the Superior Court erred in failing to impute the BlackRock Affiliates' consent to personal jurisdiction to BlackRock, Inc.  In addition to asserting arguments in support of the Superior Court's decision, the BlackRock Defendants also argue, as a separate basis for affirmance, that the Superior Court erred in finding that the BlackRock Affiliates consented to personal jurisdiction in the first place, and that there is thus no consent to impute to BlackRock, Inc.[6]

### 1. Effect of Registration by BlackRock Affiliates

¶ 21    The Superior Court agreed with the Staff Master's recommendation that the BlackRock Affiliates had consented to personal jurisdiction in the Virgin Islands pursuant to the decision of the Supreme Court of the United States in *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023), which re-affirmed its earlier decision in *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917).  The Staff Master, whose "thorough analysis" the Superior Court adopted by reference, applied those precedents to conclude that the BlackRock

---

[6] The Plaintiffs assert that the BlackRock Defendants cannot make this argument since only BlackRock, Inc., and not the other BlackRock Defendants, is a party to this appeal. As a threshold matter, the Plaintiffs cite to no authority to support their proposition that parties who fully participated in the underlying Superior Court proceeding are somehow barred from appearing as appellees on appeal.  Yet even if that were the case, BlackRock, Inc. certainly may propose alternate grounds to affirm the underlying judgment, especially when—as here—those alternate grounds were raised and adjudicated by the Superior Court on the merits. *See, e.g., Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 696 (V.I. 2015).

Affiliates consented to personal jurisdiction by complying with the portions of the Virgin Islands Uniform Securities Act ("VIUSA"), codified as 9 V.I.C. § 601 et seq., pertaining to registration of investment advisors and broker-dealers. Section 635 of the VIUSA, which regulates federal covered investment advisers, provides, in pertinent part, that

> (a) Except with respect to a federal covered investment adviser described in subsection (b), it is unlawful for a federal covered investment adviser to transact business in this State unless the federal covered investment adviser complies with subsection (c).
> . . . .
> (c) A person acting as a federal covered investment adviser, not excluded under subsection (b), shall file a notice, a consent to service of process complying with section 671, and such records that have been filed with the Securities and Exchange Commission under the Investment Advisers Act of 1940 required by rule or order under this chapter and pay the fees specified in section 640(e).

9 V.I.C. § 635(c). Section 636 of the VIUSA, which requires registration of broker-dealers, investment advisors, and others, provides, in pertinent part, that

> A person shall register as broker-dealer, agent, investment adviser, or investment adviser representative by filing an application and a consent to service of process complying with section 671, and paying the fee specified in section 640 and any reasonable fees charged by the designee of the Administrator for processing the filing. Each application must contain:
> (1) the information required for the filing of a uniform application; and
> (2) upon request by the Administrator, any other financial or other information that the Administrator determines is appropriate.

9 V.I.C. § 636(a). Section 671, referenced in both sections 635 and 636, governs service of process, and provides in pertinent part as follows:

> A consent to service of process required by this chapter must be signed and filed in the form required by rule or order under this chapter. A consent appointing the Administrator the person's agent for service of process in a noncriminal action or proceeding against the person, or the person's successor, or personal representative under this chapter or a rule adopted or order issued by the Administrator under this chapter after the consent is filed, has the same force and validity as if the service were made personally on the person filing the consent. A person that has filed a consent complying with this subsection in connection with a previous application for registration or notice filing need not file an additional

consent.

9 V.I.C. § 671(a).

¶ 22   To comply with these provisions of the VIUSA, various BlackRock Affiliates executed

and filed certain forms with the Office of the Lieutenant Governor.  Form ADV, executed and filed

by BlackRock Financial Management, Inc., BlackRock Investment Management, LLC, and

BlackRock Capital Management, Inc. contains the following language regarding consent to service

of process:

> By signing this Form ADV Execution Page, you, the undersigned adviser,
> irrevocably appoint each of the Secretary of the SEC, and the Secretary of State or
> other legally designated officer, of any other state in which you are submitting a
> notice filing, as your agents to receive service, and agree that such persons may
> accept service on your behalf, of any notice, subpoena, summons, order instituting
> proceedings, demand for arbitration, or other process or papers, and you further
> agree that such service may be made by registered or certified mail, in any federal
> or state action, administrative proceeding or arbitration brought against you in any
> place subject to the jurisdiction of the United States, if the action, proceeding or
> arbitration (a) arises out of any activity in connection with your investment advisory
> business that is subject to the jurisdiction of the United States, and (b) is founded,
> directly or indirectly, upon the provisions of: (i) the Securities Act of 1933, the
> Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Investment
> Company Act of 1940, or the Investment Advisers Act of 1940, or any rule or
> regulation under any of these acts, or (ii) the laws of any state in which you are
> submitting a notice filing.

(J.A. 1255-60; 1272-74). Similarly, Form BD, executed and filed by BlackRock Investments, LLC,

provides that

> For the purpose of complying with the laws of the State(s) designated in Item 2
> relating to either the offer or sale of securities or commodities, the undersigned and
> applicant hereby certify that the applicant is in compliance with applicable state
> surety bonding requirements and irrevocably appoint the administrator of each of
> those State(s) or such other person designated by law, and the successors in such
> office, attorney for the applicant in said State(s), upon whom may be served any
> notice, process, or pleading in any action or proceeding against the applicant arising
> out of or in connection with the offer or sale of securities or commodities, or out of
> the violation or alleged violation of the laws of those State(s), and the applicant
> hereby consents that any such action or proceeding against the applicant may be

> commenced in any court of competent jurisdiction and proper venue within said State(s) by service of process upon said appointee with the same effect as if applicant were a resident in said State(s) and had lawfully been served with process in said State(s).

(J.A. 1277 (emphasis added).) Relying on the plain language of these executed and filed forms, the provisions of the VIUSA, as well as this Court's decision in *Estate of Skepple v. Bank of Nova Scotia*, 69 V.I. 700 (V.I. 2018), the Staff Master—and ultimately the Superior Court—concluded that each of the BlackRock Affiliates had consented to personal jurisdiction in the courts of the Virgin Islands, and that these statutory schemes compelling such consent as a prerequisite to doing business in the Virgin Islands comported with due process pursuant to the U.S. Supreme Court's *Mallory* and *Pennsylvania Fire* precedents.

¶ 23    We agree. On appeal, the BlackRock Defendants assert that "none of the relevant sections of the VIUSA . . . *expressly* provides that all registrants consent to general jurisdiction." (Appellees' Br. 17 (emphasis in original).) They ignore, however, that the U.S. Supreme Court in *Mallory* expressly rejected an identical "magic words" argument with respect to the language of the Pennsylvania statutes and forms at issue in that case:

> The dissent stresses that Pennsylvania's statute does not use the word "consent" in describing the jurisdictional consequences of registration. When the dissent finally comes around to addressing *Pennsylvania Fire* at the end of its opinion, it fleetingly seeks to distinguish the decision along the same lines—stressing that words like "agent" and "jurisdiction" do not appear in Norfolk Southern's registration paperwork. But, as the dissent itself elsewhere acknowledges, a variety of legal arrangements have been taken to represent express or implied consent to personal jurisdiction consistent with due process. And neither *Pennsylvania Fire*, nor our later decisions applying it, nor our precedents approving other forms of consent to personal jurisdiction have ever imposed some sort of "magic words" requirement.

*Mallory*, 600 U.S. at 137 n.5. In fact, unlike the Pennsylvania statute, section 671 of the VIUSA <u>repeatedly</u> uses the words "consent" and "agent." And while the BlackRock Defendants selectively cite to a small number of decisions from courts outside of the Virgin Islands that held that statutes

requiring a foreign corporation to name an agent for service of process do not, as a matter of state law, result in consent to personal jurisdiction, those statutes contain different—and often narrower—language than the VIUSA. More importantly, the BlackRock Defendants deliberately limit, without explanation, their survey only to the "court[s] since *Mallory* to consider a similar statute absent prior, express state judicial precedent to the contrary." (Appellees' Br. 17.) Looking at <u>all</u> judicial decisions, and not just those decided within the last year in jurisdictions with no prior controlling precedents, reveals overwhelming support for the opposite proposition. *See, e.g., Holloway v. Wright & Morrissey, Inc.*, 739 F.2d 695, 696 (1st Cir. 1984) ("It is well-settled that a corporation that authorizes an agent to receive service of process in compliance with the requirements of a state statute, consents to the exercise of personal jurisdiction in any action that is within the scope of the agent's authority."); *Sondergard v. Miles*, *Inc.*, 985 F.2d 1389, 1393–96 (8th Cir.1993) (applying South Dakota law); *Bane v. Netlink, Inc.,* 925 F.2d 637, 640 (3d Cir. 1991) (applying Pennsylvania law); *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1200 (8th Cir.1990) (applying Minnesota law); *Werner v. Wal–Mart Stores, Inc*., 861 P.2d 270, 272 (N.M. Ct. App. 1993); *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 132-33 (Del. 2016); *Bohreer v. Erie Ins. Exch*., 165 P.3d 186, 214 (Ariz. Ct. App. 2007); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 44 (1971) ("A state has power to exercise judicial jurisdiction over a foreign corporation which has authorized an agent or a public official to accept service of process in actions brought against the corporation in the state as to all causes of action to which the authority of the agent or official to accept service extends."). Moreover, the BlackRock Defendants' overlook the plain text of Form ADV and Form BD, which both contain even broader consent language than is found in the VIUSA—Form BD, for instance, provides in addition to the service of process language that "the applicant hereby consents that any such action or proceeding against the applicant may be

commenced in any court of competent jurisdiction and proper venue within said State(s)." (J.A. 1277.) Consequently, the Superior Court committed no error when it held that the BlackRock Affiliates had all consented to personal jurisdiction in the Virgin Islands.

### 2. Failure to Analyze Imputation Issue

¶ 24     The Plaintiffs assert that the Superior Court erred by declining to impute the consent to personal jurisdiction of the BlackRock Affiliates to BlackRock, Inc. According to the Plaintiffs, the Staff Master failed to analyze the imputation of consent issue, simply dismissing it in an equivocal footnote:

> Because the undersigned concludes that BFM, BIM, BCM, and PIMCO consented, per Form ADV, and that BI and PI consented, per Form BD, the undersigned declines to address the Defendants' arguments regarding the Plaintiffs' attempt to attribute the contacts of subsidiary companies to their corporate parents. Such an attempt appears to be foreclosed by precedent. *See Daimler AG v. Bauman*, 571 U.S. 117, 135 (2014) ("But we need not pass judgment on invocation of an agency theory in the context of general jurisdiction, for in no event can the appeals court's analysis be sustained.").

The Plaintiffs further contend that the Superior Court likewise conducted no meaningful legal analysis when it overruled their objection to that portion of the Staff Master's recommendation:

> Next, the Plaintiffs object that consent of the other BlackRock Defendants should be imputed to BlackRock. As the Court noted above, the Plaintiffs contend the Staff Master either ignored or failed to sufficiently address this issue. The Court does not agree because the Staff Master concluded that the issue was foreclosed by precedent of the United States Supreme Court. Not every issue must be addressed at length. Plaintiffs disagree with the Staff Master's conclusion. Nevertheless, the Court will overrule their objection. Virgin Islands precedent is silent on whether consent can be imputed for personal jurisdiction purposes and the United States Supreme Court implied that it cannot. Considering that the consent at issue here is the consent evidenced on the Forms ADV and BD that the BlackRock and PIMCO Defendants submitted to the Office of the Lieutenant Governor, it would be a stretch to impute that consent to BlackRock. Nonetheless, the Plaintiffs are correct that the Virgin Islands Supreme Court did recognize that "consent to jurisdiction 'can result from the acts of both the person or his/her agent.'" (Pls.' Mot. 18 (quoting *Estate of Skepple v. Bank of N.S*, 69 V.I. 700, 745 (2018)) (other citations omitted).) However, the Supreme Court's statement was given in the context of a

defendant who moved to vacate without challenging personal jurisdiction and thereby consented. *See Estate of Skepple*, 69 V.I. at 747. The Plaintiffs quote *Estate of Skepple* completely out of context. Again, the Plaintiffs can raise the issue on appeal.

*Erbey Holding Corp. v. BlackRock Fin. Mgmt, Inc*., 2023 VI Super 75, ¶ 28.

¶ 25    We agree with the Plaintiffs that both the Staff Master and the Superior Court failed to analyze the legal arguments the Plaintiffs made on the imputation of consent issue. While the Superior Court characterizes the Staff Master's recommendation as "conclud[ing] that the issue was foreclosed by precedent of the United States Supreme Court," the recommendation did not actually do so; it simply said that it "<u>appears</u> to be foreclosed by precedent" without saying that it *is* foreclosed, let alone providing any explanation of how or why it is foreclosed.  And while the Staff Master's recommendation is ultimately irrelevant given its wholly non-binding nature, the Superior Court proceeded to duplicate the error by observing that "Virgin Islands precedent <u>is silent</u> on whether consent can be imputed for personal jurisdiction purposes" and that "the United States Supreme Court <u>implied</u> that it cannot," (emphases added), without making any attempt to analyze or ascertain the law.  Moreover, in the very next sentence the Superior Court acknowledged that Virgin Islands precedent is *not* entirely silent on the question, in that it recognized that this Court held in *Skepple* that "consent to jurisdiction can result from the acts of both the person or his/her agent." Yet rather than apply *Skepple* to the Plaintiffs' arguments, the Superior Court simply dismissed the Plaintiffs' reliance on that language as somehow being "out of context" and directed the Plaintiffs to "raise the issue on appeal"—again, without conducting any legal analysis of the issue raised by the Plaintiffs.  This, of course, itself constitutes error. *See Mahabir v. Heirs of George*, 63 V.I. 651, 667 (V.I. 2015) ("[T]he Superior Court cannot simply ignore arguments that a party has properly presented.").

¶ 26    Turning to the merits, we agree that the Superior Court erred by failing to impute the BlackRock Affiliates' consent to BlackRock, Inc.  While the Staff Master stated that the Plaintiffs' attempt at imputation "appears to be foreclosed" by the U.S. Supreme Court decision in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Staff Master misread the opinion in that case. The Court in *Daimler* unequivocally declined to address whether actions taken by a corporation's agent could be imputed to the corporation for purposes of determining the existence of personal jurisdiction, with the majority opinion expressly stating that "we need not pass judgment on invocation of an agency theory in the context of general jurisdiction, for in no event can the appeals court's analysis be sustained" on other grounds. *Id.* at 135. It is unclear how language in any judicial opinion—let alone an opinion issued by the U.S. Supreme Court—expressly declining to address a claim could be interpreted as a binding precedent rejecting that claim on the merits.

¶ 27    It is similarly unclear how the Superior Court arrived at the conclusion that Virgin Islands law is silent on the issue of imputing consent or how the Superior Court determined that the Plaintiffs had cited *Skepple* out of context.  In *Skepple*, this Court stated that

> Objections to personal jurisdiction—including objections to process and service—are personal defenses that are waived if not raised in a timely manner. As such, consent to and waiver of personal jurisdiction could be effectuated by innumerably varying facts. Such consent to being subject to a state's power may be express or implied through words or conduct and can result from the acts of both the person or his/her agent.

69 V.I. at 744-45 (citations omitted).  As this Court has previously emphasized, "when this Court includes plain, unambiguous language in a court order, court rule, or other court-issued document, this Court simply means what it says," and "trial courts are not at liberty to surmise or search for hidden meanings within the opinions of [this Court], but must apply those decisions as written unless expressly permitted to do otherwise by [this Court]." *Bryan v. Fawkes*, 61 V.I. 416, 457

(V.I. 2014) (collecting cases) (internal citations omitted).  The relevant language in *Skepple* could not be clearer: "consent to being subject to a state's power . . . can result from the acts of both the person or his/her agent."  And to the extent that any doubt at all remains as to the meaning of the language, the cases cited in the footnote accompanying that language unquestionably reflect that this Court meant what it said.[7]  *Skepple*, 69 V.I. at 745 n.37 (citing to *Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438 (1946) with the following parenthetical: "By consenting to service of process upon its agent residing in the southern district, petitioner rendered itself present there for purposes of service.").  Therefore, the Superior Court erred when it rejected the Plaintiffs' imputation of consent argument in a cursory manner based on a mistaken belief that existing precedents somehow foreclosed the inquiry.

### 3. Imputation of Consent of BlackRock Affiliates to BlackRock, Inc.

¶ 28    Because the existence or absence of personal jurisdiction is typically a "fact-intensive issue" that "is more appropriate for the [trial] court to pass upon" in the first instance, the remedy for the Superior Court's failure to engage in an imputation of consent analysis—including making factual findings on any of the potentially relevant factors—would typically be a remand to the Superior Court to conduct the analysis it should have done in the first place.  *See Miami Valley Fair Housing Ctr., Inc. v. Steiner & Associates, Inc.*, 483 Fed.Appx. 67, 69-70 (6th Cir. 2012).  Nevertheless, in rare cases—such as where this Court may dispose of an ordinarily fact-intensive claim based solely on application of the law—this Court may exercise its discretion to further

---

[7] In addition, although it is not clear whether the Superior Court agreed with the Staff Master's interpretation of the U.S. Supreme Court's *Daimler* decision, it is worth noting that this Court issued its opinion in *Skepple* four years after the U.S. Supreme Court issued *Daimler*, reflecting that this Court likely did not believe that *Daimler* prohibited courts from imputing an agent's consent to personal jurisdiction to a principal.

judicial economy by resolving the issue on appeal instead of ordering a remand. *See Rivera–Moreno v. Gov't of the V.I.*, 61 V.I. 279, 314 (V.I. 2014).

¶ 29 Here, the Plaintiffs assert that the consent of the BlackRock Affiliates to personal jurisdiction in the Virgin Islands should be imputed to BlackRock, Inc., not just based on an agent/principal relationship, but also on grounds that the BlackRock Affiliates are all alter egos of BlackRock, Inc. Imputation of consent on these theories is consistent not only with this Court's *Skepple* precedent, but also the decisions of numerous other courts that have determined that one or more entities or individuals were mere alter egos of an entity that consented to personal jurisdiction in the forum. *See, e.g., Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 654 (5th Cir. 2002) ("[I]mputing a corporation's consent to personal jurisdiction to its individual alter ego is consistent with the underlying rationale justifying piercing of the corporate veil."); *Gernsbacher v. WPCP Distributors, LLC*, No. 4:21-cv-0893-P, 2022 WL 2652010, at \*5 (N.D. Tex. July 8, 2022) (unpublished) ("When entities are alter egos, one entity's consent to personal jurisdiction is sufficient to allow a court to exercise personal jurisdiction over both even if the other contests it."); *Taurus IP v. DaimlerChrysler Corp.*, 519 F.Supp.2d 905, 921 (W.D. Wis. 2007) ("The other third party defendants are subject to personal jurisdiction under the alter ego doctrine, which imputes consent to jurisdiction to the alter egos of a consenting party (plaintiff) for the simple reason that the actions of a party are those of its alter egos.").[8]

---

[8] Like the Staff Master, the BlackRock Defendants invoke the *Daimler* decision for the proposition that the U.S. Supreme Court "ruled out-of-bounds" the "imputation of general jurisdiction, including such jurisdiction based on consent." (Appellees' Br. 21.) As noted above, the *Daimler* decision did no such thing, with the majority declining to even address the question of whether imputation was proper. Moreover, contrary to the BlackRock Defendants' representation, the *Daimler* case did not even involve the issue of consent at all: the case involved an attempt to use an agency theory—not an alter ego theory—to impute an agent's activities in California onto the principal, which the majority determined violated due process. But as the U.S. Supreme Court

¶ 30    Typically, determining whether an entity is an alter ego of another entity is itself a highly "fact-intensive" inquiry in which a court must consider "numerous factors" that "may be relevant in one case and irrelevant in another." *Flame S.A. v. Freight Bulk Pte. Ltd*., 807 F.3d 572, 587 (4th Cir. 2015). Thus, in virtually all cases, a claim that a corporate defendant consented to personal jurisdiction through the consent of its corporate affiliates because those affiliates are its alter egos would require detailed factual findings by the trial court. But this case is distinct in one important respect: BlackRock, Inc., represented in its Form 10-K filed with the United States Securities and Exchange Commission ("SEC") that "[t]he Company's management directs BlackRock's operations as one business," with "BlackRock" and "Company" both being defined as collectively including BlackRock, Inc. and its subsidiaries. (J.A. 1526, 1529.)  Likewise, the applications for investment advisor registration filed with the Office of Lieutenant Governor by BlackRock Financial Management, Inc., BlackRock Capital Management, Inc., and BlackRock Investment Management, LLC also state that they are under the control of BlackRock, Inc. (J.A. 1486; 1496; 1507.)

¶ 31    This Court has recognized the doctrine of judicial estoppel in the Virgin Islands "to protect the integrity of the fact-finding process by administrative agencies and courts." *Sarauw v. Fawkes*, 66 V.I. 253, 266 (V.I. 2017) (quoting *Winnebago Industries, Inc. v. Haverly*, 727 N.W.2d 567, 573 (Iowa 2006)). Under the judicial estoppel doctrine, courts will not reward a party that has chosen "to play fast and loose with the court[]" by "adopting inconsistent positions" before different courts or agencies.  *Id.* at 260-61. Here, BlackRock, Inc. itself, as well as the BlackRock Affiliates,

---

made clear in *Mallory*, due process is not implicated at all when a party consents to personal jurisdiction.  600 U.S. at 144 ("[O]ur personal jurisdiction cases have never found a Due Process Clause problem sounding in federalism when an out-of-state defendant submits to suit in the forum State. After all, personal jurisdiction is a personal defense that may be waived or forfeited.").

represented in official filings in both the SEC and the Lieutenant Governor's Office that the BlackRock Defendants all operate as "one business" under the control of BlackRock, Inc. Because they have made these admissions in proceedings before these administrative agencies, neither BlackRock, Inc. nor the BlackRock Affiliates can permissibly argue, in the instant proceeding, that BlackRock, Inc. and the BlackRock Affiliates operate as separate businesses or that BlackRock, Inc. does not control the BlackRock Affiliates. Consequently, rather than remanding the proceeding to the Superior Court for further fact-finding, we apply the judicial estoppel doctrine to hold that the BlackRock Affiliates are alter egos of BlackRock, Inc. and that, accordingly, the BlackRock Affiliates' consent to personal jurisdiction in the Virgin Islands is legally imputed to BlackRock, Inc.[9]

### III. CONCLUSION

¶ 32 The Superior Court committed error when it designated its dismissal of BlackRock, Inc. as a final judgment pursuant to Rule 54(b) of the Virgin Islands Rules of Civil Procedure. However, while this Court must reverse that designation, it will also accept jurisdiction over this appeal pursuant to the collateral order doctrine to resolve this important question that, if left unresolved here, would likely come before the Court again in future cases. With respect to the merits, we conclude that the Superior Court correctly determined that the BlackRock Affiliates consented to personal jurisdiction in the Virgin Islands, but erred by failing to impute that consent to BlackRock, Inc. Accordingly, we reverse the portion of the December 4, 2023 opinion and order dismissing the Plaintiffs' claims against BlackRock, Inc. on personal jurisdiction grounds.

---

[9] Given this holding, this Court declines to consider consider the Plaintiffs' alternate arguments that the Superior Court could exercise personal jurisdiction over BlackRock, Inc. under either the Virgin Islands long-arm statute, 5 V.I.C. § 4903, or the CICO statute, 14 V.I.C. § 607(j).

**Dated this 18th day of December, 2025**

BY THE COURT:

/s/ Rhys S. Hodge

**RHYS S. HODGE**
**Chief Justice**

**ATTEST:**
**DALILA PATTON, ESQ.**
**Acting Clerk of the Court**

**By:** /s/ Jahkyda Coakley

**Deputy Clerk II**

**Dated:** December 18, 2025