IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**
May 21, 2026 10:07 AM
ST-2023-CV-00267
**TAMARA CHARLES
CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| AAC-AIR AMBULANCE CARIBBEAN, INC., D/B/A AEROMD, | ) CASE NO. ST-2023-CV-00267 |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) JURY TRIAL DEMANDED |
| | ) |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY and AXA ASSISTANCE USA INC., | ) |
| | ) |
| Defendants. | ) |

Cite as 2026 VI SUPER 21U

## MEMORANDUM OPINION AND ORDER

¶1 Pending before this Court are:

1. Defendants' Joint Motion and Incorporated Memorandum of Law for Judgment on the Pleadings, filed August 29, 2025;

2. Plaintiff AAC-Air Ambulance Caribbean, Inc., d/b/a AeroMD's Response in Opposition to Defendants' Joint Motion for Judgment on the Pleadings, submitted October 20, 2025; and

3. Defendants' Joint Reply in Support of their Motion for Judgment on the Pleadings, submitted November 17, 2025.

For the reasons set forth below, this Court will grant in part and deny in part Defendants' Joint Motion.

### I. BACKGROUND

¶2 On August 18, 2023, Plaintiff AAC-Air Ambulance Caribbean, Inc., d/b/a AeroMD ("AeroMD") filed its initial Verified Complaint, and on July 28, 2025, AeroMD filed its Verified Second Amended Complaint (the "Complaint") against Defendant Cigna Health and Life Insurance Company ("Cigna") and AXA Assistance USA Inc. ("AXA").

¶3 The Complaint alleges eleven counts: (I) Breach of Express Contract (against Cigna and AXA); (II) Breach of Implied-in-Fact Contract (against Cigna and AXA); (III) Quantum Meruit/Unjust Enrichment (against Cigna and AXA); (IV) Breach of Contract – Asserted by

AeroMD as Third-Party Beneficiary of the Cigna Plans (against Cigna and AXA); (V) Breach of Fiduciary Duty – Cigna Non-ERISA Plans (against Cigna and AXA); (VI) Breach of Fiduciary Duty – VI Government Plan (against Cigna and AXA); (VII) Tortious Interference with Prospective Business Relations (against Cigna and AXA); (VIII) Tortious Interference with Existing Contracts – Contract Between AeroMD and Cigna (against AXA); (IX) Tortious Interference with Existing Contracts – AeroMD Membership Program Contracts Between AeroMD and Certain Cigna Plan Enrollees (against Cigna and AXA); (X) Prima Facie Tort (against Cigna and AXA); and (XI) Gross Negligence (against Cigna and AXA).[1]

¶4     In its Complaint, AeroMD states that it "is the only air ambulance provider with planes based in the U.S. Virgin Islands" and provides "emergency medical transport, either within the U.S. Virgin Islands or to the United States mainland."[2] AeroMD claims that Cigna and AXA "have drastically underpaid or failed to pay AeroMD for the emergency air ambulance services AeroMD has provided to Cigna Plan enrollees, and/or have failed to promptly pay for such services" and have underpaid AeroMD "by more than $9 million to date."[3] Additionally, AeroMD claims that Cigna and AXA are "effectively boycotting AeroMD's services by requiring Cigna Plan enrollees to use other air ambulance providers" and are impermissibly intruding "into physician-patient relationships by second-guessing or overriding health care providers' judgment as to the medical necessity of emergency air ambulance services, as well as the urgency of such services."[4] Furthermore, AeroMD alleges that "dating back to at least 2020, and continuing to the present time, Cigna and AXA have hindered Cigna Plan enrollees' access to medically necessary emergency air ambulance services" as they search for cheaper air ambulance options, which causes "Cigna Plan enrollees' medical conditions to deteriorate."[5] AeroMD also alleges that "Cigna and AXA have treated emergencies necessitating emergent medical transport as non-emergent" and "are violating Plan terms by overriding, and impermissibly retrospectively changing, emergent medical orders where the medical records clearly evidence a need for emergent medical transport."[6]

¶5     On August 29, 2025, Defendants Cigna and AXA filed the present Joint Motion and Incorporated Memorandum of Law for Judgment on the Pleadings pursuant to Virgin Islands Rule of Civil Procedure 12(c).

## II. LEGAL STANDARD

### A. Virgin Islands Rule of Civil Procedure 12(c).

¶6     Virgin Islands Rule of Civil Procedure 12(c) states: "After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."[7] "The court

---

[1] With the exception of Count VIII, all of the Counts are alleged against both Cigna and AXA.

[2] Verified Second Am. Compl. ¶ 1 [hereinafter "Compl."].

[3] Compl. ¶¶ 6–7.

[4] Compl. ¶¶ 12–13.

[5] Compl. ¶¶ 9–11.

[6] Compl. ¶¶ 63–64.

[7] V.I. R. CIV. P. 12(c).

should not grant a motion for judgment on the pleadings unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law."[8] Additionally, the Court views the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff.[9] "In determining whether it is proper to grant a motion for a judgment on the pleadings, the Court is 'foreclosed from considering evidence from any source outside of the pleadings and the exhibits attached to the pleadings.'"[10]

## B. 49 U.S.C. § 41713.

¶7     At the center of Defendants' Motion is the Airline Deregulation Act ("ADA"), or more specifically, 49 U.S.C. § 41713(b)(1), which states:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.[11]

## III. ANALYSIS

### A. Arguments of the parties.

¶8     In Defendants' present Joint Motion, pursuant to Rule 12(c), Cigna and AXA seek to have this Court dismiss with prejudice all the Counts in the Complaint, except Counts I, II, and IV (breach of contract claims), because the majority of the Counts "seek to impose state-law duties and remedies the ADA expressly prohibits" (under 49 U.S.C. § 41713(b)(1)).[12] First, Defendants claim the ADA preempts all non-contract claims. They write: "Accordingly, while breach-of-contract claims based on voluntary undertakings may proceed, all other state or territorial claims—whether framed tort, fiduciary duty, unjust enrichment, or otherwise—are preempted if they relate to airline rates, routes, or services."[13] Second, Defendants argue that AeroMD's non-contract claims are preempted by the ADA because they relate to pricing and services. For instance, Defendants claim that AeroMD's non-contract theories "do not merely touch upon pricing and services; they are built entirely on them."[14] Citing *Northwest, Inc. v. Ginsberg*, Defendants claim the test is straightforward: a claim is preempted if it has a connection with, or reference to, airline rates, routes, or services.[15] Furthermore, Cigna and AXA claim that AeroMD "itself admits this

---

[8] *Aaron v. Virgin Islands Gov't Hosp. & Health Facilities Corp.*, 74 V.I. 222, 231, 2021 VI SUPER 30P, ¶ 8 (Super. Ct. 2021) (citations and internal quotations omitted).

[9] *Id.* at 232.

[10] *Rondon v. Caribbean Leasing & Eco Transportation, Inc.*, 74 V.I. 397, 405, 2021 VI SUPER 72, ¶ 10 (V.I. Super. 2021) (citation omitted).

[11] 49 U.S.C. § 41713(b)(1).

[12] Defs.' Joint Mot. and Inc. Mem. of Law for J. on the Pleadings 1.

[13] Defs.' Joint Mot. and Inc. Mem. of Law for J. on the Pleadings 6.

[14] Defs.' Joint Mot. and Inc. Mem. of Law for J. on the Pleadings 6.

[15] *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 280, 134 S. Ct. 1422, 1428, 188 L. Ed. 2d 538 (2014).

principle" and "acknowledge[s] the very rule that defeats its own claims" such as by AeroMD highlighting caselaw on the ADA and stating that it itself is an air carrier under the ADA.[16] Lastly, Defendants argue that courts "consistently dismiss reimbursement claims indistinguishable from those asserted here" and cite several cases but particularly highlight *Reva, Inc. v. Humana Health Benefit Plan of Louisiana, Inc.*[17] Defendants write that, in *Reva*, "the court held that unjust enrichment and quantum meruit claims seeking the 'full billed charges' for air ambulance services were preempted because they directly sought to establish the price of an air carrier's services."[18] Cigna and AXA claim that all of AeroMD's Counts (except Counts I, II, and IV) are similarly preempted because each Count is either a vehicle to recover the funds equal to the price of AeroMD's ambulance services or to challenge Defendants' choice of services.

¶9    In its Opposition, AeroMD begins by stating that, contrary to Defendants' claims, patient safety is central to this case, and AeroMD writes that: "Defendants' arguments in support of preemption are plagued by misinterpretation of existing authority, failure to acknowledge the purpose of the ADA, and a refusal to recognize the nature of AeroMD's claims at issue."[19] First, AeroMD argues that the Court must start by applying a presumption against preemption and that the Defendants bear the burden of showing with specificity that preemption is appropriate, which, AeroMD claims, Defendants have failed to demonstrate. Second, AeroMD argues that the U.S. Supreme Court has not held that all non-breach-of-contract claims are *per se* preempted. AeroMD and Defendants disagree on the interpretation and application of mainly three U.S. Supreme Court cases: *Northwest, Inc. v. Ginsberg, American Airlines, Inc. v. Wolens*, and *Morales v. Trans World Airlines, Inc.*[20] AeroMD argues that as a result of *Ginsberg, Wolens*, and *Morales*, the U.S. Supreme Court has carved out a general exception for breach-of-contract-related claims, but, the U.S. Supreme Court has not adopted a bright-line rule and the number and type of exceptions is broader: many different types of claims are held by courts to also not be preempted. For instance, AeroMD cites several court cases, and claims they are examples where courts found that state tort law claims were not preempted by the ADA.[21] Third, AeroMD argues that its state tort law claims are not subject to the ADA's preemption provision because its claims do not have an impermissible regulatory effect, but instead, the claims seek to protect AeroMD's own agreements. AeroMD claims that the Court must first inquire into the purpose behind the ADA and that the ADA's purpose is geared towards deregulation and the promotion of competition.[22] In particular, AeroMD writes that the purpose behind the ADA's preemption was to ensure that the States would not undo federal deregulation with regulation of their own. Citing *Frequent Flyer Depot, Inc. v. American*

---

[16] Defs.' Joint Mot. and Inc. Mem. of Law for J. on the Pleadings 6.

[17] *Reva, Inc. v. Humana Health Benefit Plan of Louisiana, Inc.*, No. 18-20136-CIV, 2018 WL 1701969 (S.D. Fla. Mar. 19, 2018).

[18] Defs.' Joint Mot. and Inc. Mem. of Law for J. on the Pleadings 7.

[19] Pl. AAC-Air Ambulance Caribbean, Inc., d/b/a AeroMD's Resp. in Opp'n to Defs.' Joint Mot. for J. on the Pleadings 1.

[20] *Nw., Inc. v. Ginsberg*, 572 U.S. 273 (2014); *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992).

[21] Pl. AAC-Air Ambulance Caribbean, Inc., d/b/a AeroMD's Resp. in Opp'n to Defs.' Joint Mot. for J. on the Pleadings 8.

[22] Pl. AAC-Air Ambulance Caribbean, Inc., d/b/a AeroMD's Resp. in Opp'n to Defs.' Joint Mot. for J. on the Pleadings 10.

*AAC-Air Ambulance Caribbean, Inc., d/b/a AeroMD v. Cigna et al.*
Case No. ST-2023-CV-00267
Memorandum Opinion and Order
Page 5 of 19

2026 VI SUPER 21U

*Airlines, Inc.*[23] AeroMD argues that: "Put simply, existing jurisprudence makes clear that the ADA was intended to preempt only those state actions having a regulatory effect upon the air [carriers] rather than to preclude air [carriers] from seeking the benefits and protections of state law to enforce their self-imposed standards, regulations, and contracts."[24] AeroMD also highlights *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*[25] and claims that a finding that its claims are not preempted would be appropriate in light of Congress's retention of the saving clause. AeroMD states that: "[b]ecause application of state law in these circumstances does not frustrate the purpose of the ADA, nor does it impose public utility-like regulation on air carriers, this Court should hold AeroMD's claims are not preempted."[26] Lastly, AeroMD argues that its claims for unjust enrichment and breach of fiduciary duty (Counts III, V, and VI) are distinguishable from *Ginsberg* and are not subject to preemption.

¶10    In their Reply, Cigna and AXA write that "this Motion turns on a single question of law: whether the ADA permits Plaintiff to repackage rate and service disputes as tort or quasi-contract claims. It does not."[27] Defendants claim that this dispute, at its core, is about prices and services and that each Count (except Counts I, II, and IV) "uses territorial common law to expand the alleged contract and to attempt to extract a higher price or greater level of service for Plaintiff," which is a matter expressly preempted by the ADA preemption provision.[28] Defendants argue that AeroMD's Response "sidesteps the U.S. Supreme Court's plain directives" in *Ginsberg*, *Wolens*, and *Morales* and "leans instead on scattered citations to lower court opinions."[29] First, Defendants argue that *Ginsberg*, *Wolens*, and *Morales* are binding and are not in AeroMD's favor. For instance, Defendants write how (1) *Morales* requires the ADA preemption provision to be interpreted broadly and that the Court must apply it to any claim that touches airline pricing, routes, or services; (2) *Wolens* carves out a lone exception for breach-of-contract claims and that Defendants' present Motion respects that boundary by challenging only the non-contract claims; and (3) *Ginsberg* extends the ADA preemption provision to state common-law rules and that the ADA preempts any additional claims beyond the four corners of the contract. "Read together *Morales*, *Wolens*, and *Ginsberg*, establish a clear rule: purely contractual claims may proceed but all others are preempted if they (1) relate to an air carrier's price, route, or service; (2) arise under state or territorial law; or (3) enlarge the contract's scope."[30] Second, Defendants claim that AeroMD's non-contract claims are preempted because they target price, route, and service, and extend beyond the alleged contract. Defendants write: "The issue here is not how the ADA might be read in the abstract. That debate is already settled. The only issue here is whether Plaintiff's claims regulate price, route, or service. They do. And, under the ADA, that ends the matter."[31] Third, Defendants argue that AeroMD's territorial tort claims have an impermissible regulatory

---

[23] *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 221 (Tex. App. 2009).

[24] Pl. AAC-Air Ambulance Caribbean. Inc., d/b/a AeroMD's Resp. in Opp'n to Defs.' Joint Mot. for J. on the Pleadings 13 (quotation omitted).

[25] *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 194 (3d Cir. 1998).

[26] Pl. AAC-Air Ambulance Caribbean, Inc., d/b/a AeroMD's Resp. in Opp'n to Defs.' Joint Mot. for J. on the Pleadings 15.

[27] Defs.' Joint Reply in Supp. of their Mot. for J. on the Pleadings 2.

[28] Defs.' Joint Reply in Supp. of their Mot. for J. on the Pleadings 1.

[29] Defs.' Joint Reply in Supp. of their Mot. for J. on the Pleadings 2.

[30] Defs.' Joint Reply in Supp. of their Mot. for J. on the Pleadings 3–4.

[31] Defs.' Joint Reply in Supp. of their Mot. for J. on the Pleadings 4.

effect because it asks the Court to set prices and service obligations for AeroMD's air ambulance services. Defendants also claim that AeroMD's counterargument is circular: AeroMD is asserting its suit promotes competition by trying to avail itself of agreements voluntarily undertaken in the marketplace, but AeroMD is asking the Court to impose remedies outside of that contract, which impermissibly enlarges its contractual agreement as to price and service.[32] Lastly, Defendants argue that AeroMD fails to distinguish *Ginsberg*. For instance, Defendants write how AeroMD cites many cases, such as *Solo v. United Parcel Serv. Co.*,[33] *Walters v. Walters*, and *RC Hotels (Virgin Islands), Inc. v. Moore*, in the Response to separate its unjust enrichment and fiduciary duty claims from *Ginsberg*, but that AeroMD's reliance on these cases is misplaced because they do not support AeroMD's argument. "Neither *Walters* nor *Moore* narrows *Ginsberg*'s reach. If anything, both reinforce it: each relies on broad, equitable notions of fairness that fall squarely within the ADA's preemptive scope. Plaintiff's attempt to recast those doctrines as contract-based is not only doctrinally wrong but legally irrelevant."[34]

### B. The ADA preemption provision preempts many of AeroMD's Counts.

¶11　　Defendants challenge all of AeroMD's Counts, except Counts I, II, and IV. All of these challenged Counts utilize Virgin Islands common law and seek relief. In its Complaint, AeroMD states that: "AeroMD is an 'air carrier,' as that term is defined in the Airline Deregulation Act of 1978 (ADA)."[35] This Court agrees that AeroMD is an air carrier and that the ADA applies in this context as AeroMD provides air transportation for people in and around the U.S. Virgin Islands,[36] including to "hospitals in the mainland United States."[37]

¶12　　Consequently, the ADA preemption provision is central to the present dispute between the parties. The Court acknowledges that "[t]he interpretation of a preemption provision begins with 'the presumption that Congress does not intend to supplant state law.'"[38] However, the ADA preemption provision under 49 U.S.C. § 41713(b)(1) expressly preempts States[39] from enforcing a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation.[40]

¶13　　As the parties highlight, *Ginsberg*, *Wolens*, and *Morales* are the main U.S. Supreme Court cases that clarify the application of ADA and the preemption provision. For instance, the U.S. Supreme Court has clarified the purpose of the ADA. "The Act eliminated federal regulation of rates, routes, and services in order to allow those aspects of air transportation to be set by market forces, and the pre-emption provision was included to prevent the States from undoing what the

---

[32] Defs.' Joint Reply in Supp. of their Mot. for J. on the Pleadings 5.

[33] *Solo v. United Parcel Serv. Co.*, 819 F.3d 788 (6th Cir. 2016).

[34] Defs.' Joint Reply in Supp. of their Mot. for J. on the Pleadings 8.

[35] Compl. ¶ 81.

[36] An "air carrier" is defined as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2).

[37] Compl. ¶ 31.

[38] *Cape Air Int'l v. Lindsey*, 53 V.I. 604, 616 (2010) (citation omitted).

[39] A "State" is defined to include a territory of the United States. 49 U.S.C. § 41713(a).

[40] 49 U.S.C. § 41713(b)(1).

Act was meant to accomplish."[41]

¶14      In *Morales*, the U.S. Supreme Court held that the ADA pre-empted the use of state consumer protection laws to regulate airline advertising. Concerning the ADA, the Court held that "related to" expresses a "broad pre-emptive purpose" and that a claim "relat[es] to rates, routes, or services" if the claim "ha[s] a connection with, or reference to, airline 'rates, routes, or services.'"[42] In other words, the Supreme Court has given a broad interpretation to the words "relating to," holding that state enforcement actions having a connection with, or reference to airline rates, routes, or services are pre-empted.[43] However, "*Morales* also left room for state actions 'too tenuous, remote, or peripheral ... to have pre-emptive effect.'"[44]

¶15      But in *Wolens*, the U.S. Supreme Court considered the application of the ADA pre-emption provision to claims under the Illinois Consumer Fraud and Deceptive Business Practices Act and breach of contract claims. The Court held that the pre-emption provision barred the claims based on the Illinois statute but not the claims concerning breach of contract. The Court reasoned that terms and conditions airlines offer that passengers accept are privately ordered obligations and are not preempted. "A remedy confined to a contract's terms simply holds parties to their agreements—in this instance, to business judgments an airline made public about its rates and services."[45]

¶16      More recently, in *Ginsberg*, the Court held that: (1) the phrase "other provision having the force and effect of law" under 49 U.S.C. § 41713(b)(1) includes state common-law rules; (2) that the airline customer's claim of the implied covenant of good faith and fair dealing (concerning the airline revoking his membership in the frequent flyer's program) related to "rates, routes, or services"; and (3) the implied covenant claim was a state-imposed obligation (and not one that the parties voluntarily undertook), which made the claim preempted under the ADA preemption clause.[46] "When the law of a State does not authorize parties to free themselves from the covenant, a breach of covenant claim is pre-empted under the reasoning of *Wolens*."[47] Similarly, the Court also stated:

> A State's implied covenant rules will escape pre-emption only if the law of the

---

[41] *Ginsberg*, 572 U.S. at 283 (citation omitted).

[42] *Morales*, 504 U.S. at 383–84.

[43] *Gary v. Air Grp., Inc.*, 397 F.3d 183, 186 (3d Cir. 2005) (citation and internal quotations omitted).

[44] *Wolens*, 513 U.S. at 224 (citation omitted).

[45] *Id.* at 229 (footnote omitted).

[46] Additionally, regarding AeroMD's mention of the Federal Aviation Act's saving provision, the U.S. Supreme Court has written that: "While the ADA did not repeal the predecessor law's saving provision, it included a pre-emption provision in order to 'ensure that the States would not undo federal deregulation with regulation of their own.'" *Ginsberg*, 572 U.S. at 280. In particular, when establishing the exception from *Wolens*, the U.S. Supreme Court wrote: "The ADA's preemption clause, § 1305(a)(1), read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Wolens*, 513 U.S. at 232–33.

[47] *Ginsberg*, 572 U.S. at 287.

relevant State permits an airline to contract around those rules in its frequent flyer program agreement, and if an airline's agreement is governed by the law of such a State, the airline can specify that the agreement does not incorporate the covenant. While the inclusion of such a provision may impose transaction costs and presumably would not enhance the attractiveness of the program, an airline can decide whether the benefits of such a provision are worth the potential costs.[48]

¶17     Here, AeroMD and Defendants largely dispute the scope and application of *Ginsberg*, *Wolens*, and *Morales*. AeroMD is correct that preemption provision is not an automatic process for every common law claim and that some courts have held that many different types of claims are not preempted, including some claims based in state tort law. AeroMD is also correct in part on how an interpretation of the preemption clause usually begins with the presumption against preemption of state law.[49] However, the key components boil down to an analysis of the purpose of the preemption provision and the framework outlined by *Ginsberg*. AeroMD urges this Court to view the exception from *Wolens* broadly, while Defendants argue for the Court to view the *Wolens* exception much more narrowly, both centered around whether a given "claim is based on a state-imposed obligation or simply one that the parties voluntarily undertook."[50] Additionally, the preemption provision is often analyzed in the context of a party bringing a claim against an air carrier, but here, an air carrier (AeroMD) is bringing state claims against two parties (Defendants). But claims based in state law brought by an air carrier itself can be preempted.[51]

¶18     In this case, the Court finds that many of the challenged Counts[52] in AeroMD's Complaint would possibly curtail competition in the marketplace in the air ambulance industry, would have a significant effect on the airline prices and services, and would go against the purpose of the ADA and its preemption provision (the purpose was to encourage competitive market forces in the airline industry and limit state regulation). For instance, as alleged in AeroMD's Complaint, two underlying central aspects throughout include how: (1) Defendants allegedly *underpaid* AeroMD by more than $9 million "for emergency air ambulance *services* provided to Cigna Plan enrollees,"[53] and (2) to the alleged detriment of Cigna enrollees and AeroMD, Defendants are allegedly "making purely *economic* decisions in emergency circumstances"[54] and have "hindered Cigna Plan enrollees' access to medically necessary emergency air ambulance *services* as they '*shop*' for purportedly *less-expensive* air ambulance *options*."[55] However, this Court will examine each of the challenged Counts in light of the framework outlined by *Ginsberg*.

---

[48] *Id.* at 288.

[49] *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 134 (3d Cir. 2018).

[50] *Ginsberg*, 572 U.S. at 285.

[51] *See, e.g., Worldwide Aircraft Servs. Inc. v. Connecticut Gen. Life Ins. Co.*, 749 F. Supp. 3d 1204, 1217 (M.D. Fla. 2024), *aff'd*, No. 25-10774, 2025 WL 3642361 (11th Cir. Dec. 16, 2025); *see, e.g., Scarlett v. Air Methods Corp.*, 922 F.3d 1053 (10th Cir. 2019).

[52] As Defendants state, Counts I, II, and IV have not been challenged largely due to the exception from *Wolens*.

[53] Compl. ¶ 40 (emphasis added).

[54] Compl. ¶ 58 (emphasis added).

[55] Compl. ¶ 9 (emphasis added).

*AAC-Air Ambulance Caribbean, Inc., d/b/a AeroMD v. Cigna et al.*
Case No. ST-2023-CV-00267
Memorandum Opinion and Order
Page 9 of 19

2026 VI SUPER 21U

### i. Count III: Quantum Meruit/Unjust Enrichment (against Cigna and AXA).

¶19 In the Virgin Islands, "[a] cause of action for quantum meruit, also known as unjust enrichment, will ordinarily lie in a case where the defendant 'receive[s] something of value to which he is not entitled and which he should restore' to the plaintiff."[56] In *Walters v. Walters*, the Supreme Court of the Virgin Islands outlined the elements for the unjust enrichment cause of action: the plaintiff must prove: "(1) that the defendant was enriched, (2) that such enrichment was at the plaintiff's expense, (3) that the defendant had appreciation or knowledge of the benefit, and (4) that the circumstances were such that in equity or good conscience the defendant should return the money or property to the plaintiff."[57]

¶20 In Count III, AeroMD alleges that AeroMD provided and continues to provide "emergency medical services in the form of emergent air ambulance transports for Cigna Plan enrollees" when medically necessary.[58] "Defendants could not lawfully prevent Cigna Plan enrollees from seeking emergency air ambulance services from AeroMD. Thus, the parties were, in effect, compelled to do business with each other."[59] AeroMD claims that "Cigna Plan enrollees accepted the treatment and services that AeroMD provided to them." AeroMD argues that Defendants benefited and are unjustly enriched from Cigna Plan enrollees receiving treatment and services from AeroMD and by Defendants underpaying (or not paying) AeroMD for the provided services.[60]

¶21 AeroMD argues that the ADA does not preempt claims that seek to utilize state law to enforce their self-imposed contracts and expectations.[61] For instance, AeroMD cites *Solo v. United Parcel Serv. Co.* where the U.S. Court of Appeals for the Sixth Circuit analyzed caselaw on ADA preemption and found that the Plaintiff could plead unjust enrichment in the alternative when later on remand before the district court.[62]

> In *Northwest Inc.*, for instance, the Supreme Court found it determinative that the duty of good faith and fair dealing applied to "every contract" under the governing state law. In this way, the doctrine acted as a tool used by the state to "ensure that a party does not 'violate community standards of decency, fairness, or reasonableness.' " The doctrine of unjust enrichment does not synonymously apply to all contracts as a matter of state policy. Instead, unjust enrichment serves to "effectuate the intentions of parties or to protect their reasonable expectations," and

---

[56] *Cacciamani & Rover Corp. v. Banco Popular De Puerto Rico*, 61 V.I. 247, 251 (2014) (citation omitted).

[57] *Walters v. Walters*, 60 V.I. 768, 779–80 (2014) (footnote omitted).

[58] Compl. ¶ 103.

[59] Compl. ¶ 104.

[60] Compl. ¶ 110-111.

[61] *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 221 (Tex. App. 2009) ("The Act was intended to pre-empt only those state actions having a regulatory effect upon the airlines rather than to preclude airlines from seeking the benefits and protections of state law to enforce their self-imposed standards, regulations, and contracts.").

[62] The case before the Sixth Circuit involved potential fraud and allegations that United Parcel Service Co. (UPS) overcharged customers for liability coverage against loss or damage for packages with a declared value of $300 or more.

thus looks to the particular parties to a transaction rather than a universal, state imposed obligation.[63]

¶22    However, in that case, the Sixth Circuit expressly stated that it was "not inclined to decide this matter before it has been fully briefed by both parties and considered by the district court in the first instance."[64] The court concluded that "[o]n remand, both parties will have the opportunity to fully form their arguments on the preemption issue, to be considered by the district court as the case progresses."[65]

¶23    However, a cause of action for quantum meruit (unjust enrichment) is based upon an implied-in-law contract, and many courts have found that such claims are barred under the ADA.[66] As the U.S. District Court for the Middle District of Florida recently stated when faced with a similar claim brought by an air ambulance company:

> On the other hand, courts have been unanimous in finding that implied-in-law contract claims are preempted by the ADA because they are inherently predicated on the lack of a contract and thus involve a state-imposed obligation . . . Because recent Florida courts agree that a quantum meruit claim is a claim for a contract implied-in-law, the Court finds Count II is preempted as pled and gives Plaintiff leave to amend its complaint to specify whether it is bringing an implied-in-fact or an implied-in-law claim.[67]

¶24    Similarly, the U.S. District Court for the District of New Jersey considered a challenged duty and found that it related to a price, route or service and stated that "state common law claims of fraud and unjust enrichment are barred by the 'broad pre-emptive purpose' of the ADA and FAAAA, and with Congress' intent to deregulate the airline and trucking industries."[68] In that case, the court explained that Plaintiff could still seek relief before the U.S. Department of Transportation.

¶25    In the present case, this Court finds that the common law claim relates to an air carrier's rates, routes, and services as it concerns the treatment and services provided by AeroMD and the alleged insufficient payment to AeroMD by Defendants. The claim would significantly affect such rates, routes, and services as AeroMD seemingly seeks to increase the payment amounts (rates) and number of flights (services). The claim is also a state-imposed obligation (not voluntarily undertaken as such claims are predicated on the lack of an agreement), and the claim goes against

---

[63] *Solo*, 819 F.3d at 798 (citations omitted).

[64] *Id.* at 797.

[65] *Id.* at 798.

[66] *Arvidson v. Buchar*, 71 V.I. 277, 352, 2019 VI SUPER 122, ¶ 105 (V.I. Super. 2019) (footnote omitted); *see Vanterpool v. Gov't of Virgin Islands*, 63 V.I. 563, 590 (2015); *In re Thorpe*, 755 F. App'x 177, 181 (3d Cir. 2018) (citation omitted); *PHI Air Med., LLC v. Corizon, Inc.*, 628 S.W.3d 460 (Tenn. Ct. App. 2021); *see generally* Construction and Application of § 105 Airline Deregulation Act, 149 A.L.R. Fed. 299 (1998) (describing preemption clause of ADA).

[67] *Worldwide Aircraft Servs.*, 749 F. Supp. at 1214 (citations omitted).

[68] *Martin v. DHL Express (USA), Inc.*, 580 F. Supp. 3d 66, 73 (D.N.J. 2022) (citation omitted).

the purpose of the ADA and its preemption provision.[69] As such, Count III of Quantum Meruit/Unjust Enrichment (against Cigna and AXA) is preempted by 49 U.S.C. § 41713(b)(1). The Joint Motion will be granted as it pertains to Count III.

### ii. Count V of Breach of Fiduciary Duty – Cigna Non-ERISA Plans (against Cigna and AXA) and Count VI of Breach of Fiduciary Duty – VI Government Plan (against Cigna and AXA).

¶26     Counts V and VI both allege breaches of fiduciary duty by Cigna and AXA. In *Arvidson v. Buchar*, the Superior Court cited *Ebner v. Petrohan* and described the elements of a claim of breach of fiduciary duty.[70]

> *Ebner* also determined that a plaintiff asserting a claim of breach of fiduciary duty must provide the following four elements: "(1) that a fiduciary relationship exists; (2) that the fiduciary breached the duty imposed by said relationship; (3) that the plaintiff must have been harmed; and (4) that the fiduciary's breach was the proximate cause of said harm." "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." "Some fiduciary relations, such as those of trustee and beneficiary, principal and agent[,] and director and corporation are the subject of a considerable group of substantive rules of law."[71]

Similarly, the Superior Court has also stated that "[t]he existence and scope of a fiduciary duty is determined by the relationship between parties. If the relationship is established by contract, the existence and scope of a fiduciary duty may be ascertained by examining the contractual terms."[72]

¶27     For Count V, AeroMD alleges that "[u]nder the Cigna Non-ERISA Plans, Cigna and AXA are fiduciaries entrusted with the obligation to pay for medically necessary services, covered services, or covered benefits as defined by the Plans. Cigna and AXA further owe Cigna Non-ERISA Plan enrollees a fiduciary duty and a duty to act in good faith and deal fairly."[73] AeroMD claims that Defendants "breached and abused their fiduciary duties to the Cigna Non-ERISA Plan enrollees" by "denying and/or underpaying claims for services provided to Cigna Non-ERISA Plan enrollees arbitrarily and capriciously, in bad faith, and under false pretenses in order to maximize their profits."[74] In particular, AeroMD states that "the Cigna Non-ERISA Plans did not prohibit

---

[69] *Byler v. Air Methods Corp.*, 823 F. App'x 356, 364 (6th Cir. 2020) (citations omitted) ("In any event, courts have been unanimous in the view that implied-in-law contract claims and related claims for unjust enrichment are preempted by the ADA because they are predicated on the lack of an agreement and thus involve a state-imposed obligation."); *Odell v. Critical Care Medflight*, 503 F. Supp. 3d 1037, 1044 (D. Kan. 2020) (citations omitted) ("[C]laims based on duties implied-in-law 'are necessarily preempted for lack of mutual assent' under the rule of *Ginsberg*.").

[70] *Ebner v. Petrohan*, No. ST-14-CV-537, 2018 WL 3996888, at *7 (V.I. Super. Aug. 14, 2018).

[71] *Arvidson v. Buchar*, 2020 VI SUPER 48, ¶¶ 12-13 (V.I. Super. Mar. 28, 2020) (footnotes omitted).

[72] *RC Hotels (Virgin Islands), Inc. v. B & T Cook Fam. Partners, Ltd.*, 57 V.I. 3, 11 (V.I. Super. 2012) (footnotes and internal quotations omitted).

[73] Compl. ¶ 118.

[74] Compl. ¶ 119.

Cigna Non-ERISA Plan enrollees from assigning their rights to benefits under the Cigna Non-ERISA Plans to AeroMD, including the right of direct payment of benefits under the Cigna Non-ERISA Plans."[75] AeroMD states that Defendants "violated their fiduciary duty of loyalty to AeroMD" and violated the Cigna Non-ERISA Plans and territorial and federal law and regulations.[76]

¶28    Similarly, in Count VI, AeroMD alleges that "[u]nder the VI Government Plan, Defendants are fiduciaries entrusted with the obligation to pay/provide for medically necessary services, covered services, or covered benefits as defined by the Plan. Defendants further owe VI Government Plan enrollees a fiduciary duty in this regard, as well as a duty to act in good faith and deal fairly."[77] AeroMD states that "Defendants breached and abused their fiduciary duties to VI Government Plan enrollees by denying/underpaying claims for medically necessary emergency air ambulance services to which such enrollees were entitled, and Defendants did so arbitrarily and capriciously, in bad faith, and under false pretenses in order to maximize their profits."[78] AeroMD claims that "the VI Government Plan did not prohibit VI Government Plan enrollees from assigning their rights to benefits under the VI Government Plan to AeroMD, including the right of direct payment of benefits under the VI Government Plan."[79] "As the assignee of VI Government Plan enrollees, AeroMD is entitled to recover benefits due to the VI Government Plan enrollees and enforce the rights of VI Government Plan enrollees under the terms of the VI Government Plan and policies."[80] AeroMD claims that "Defendants violated their fiduciary duties of loyalty to AeroMD by, among other things, wrongfully denying and/or underpaying claims for costs associated with the provision of emergency air ambulance services in violation of the VI Government Plan, territorial law, and under false pretenses; refusing to allow AeroMD any opportunity to negotiate coverage beyond the unduly burdensome terms it has wrongfully required in contravention of applicable law and Plan terms; and failing to inform AeroMD, as assignee of the VI Government Plan enrollees, of material information."[81] AeroMD states that it continues to suffer damages from "Defendants' violations of their fiduciary duties to AeroMD (as the assignee of the VI Government Plan enrollees), including, but not limited to, their failures to comply with applicable territorial common law, statutes, or regulations requiring timely payment of claims . . . ."[82]

¶29    For Counts V and VI, AeroMD argues that a claim for breach of fiduciary duty is not preempted. AeroMD writes that, unlike with the covenant under Minnesota law in *Ginsberg*, the Virgin Islands does not apply a fiduciary duty to every contract. Instead, AeroMD claims that the Virgin Islands uses contractual fiduciary duties to effectuate the intentions of the parties or to protect their reasonable expectations and agreements.[83]

---

[75] Compl. ¶ 121.
[76] Compl. ¶¶ 124–125.
[77] Compl. ¶ 127.
[78] Compl. ¶ 128.
[79] Compl. ¶ 130.
[80] Compl. ¶ 132.
[81] Compl. ¶ 133.
[82] Compl. ¶ 134.
[83] Pl. AAC-Air Ambulance Caribbean, Inc., d/b/a AeroMD's Resp. in Opp'n to Defs.' Joint Mot. for J. on the Pleadings

¶30    This Court finds that Counts V and VI relate to an air carrier's rate and services. But that does not end the analysis. In this case, a critical aspect under *Ginsberg* involves whether each "claim is based on a state-imposed obligation or simply one that the parties voluntarily undertook."[84] As AeroMD argues, the specific parameters of the parties' alleged fiduciary relationship(s) and duties would largely be based upon the language and terms of the Plans themselves (that the parties voluntarily undertook).[85] For instance, AeroMD alleges that Cigna and AXA had fiduciary duties under the Cigna Non-ERISA Plans and the VI Government Plan and that Cigna and AXA breached these fiduciary duties.[86] But these Plans (and any material accompanying documents) have not all been provided to this Court in their entirety at this early stage.[87] Consequently, viewing the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to AeroMD, the Court finds that Defendants have not sufficiently shown that Counts V and VI are preempted.[88] As such, at this early stage, Defendants' motion as it pertains to Counts V and VI will be denied.

### iii. Count VII of Tortious Interference with Prospective Business Relations (against Cigna and AXA), Count VIII of Tortious Interference with Existing Contracts – Contract Between AeroMD and Cigna (against AXA), and Count IX of Tortious Interference with Existing Contracts – AeroMD Membership Program Contracts Between AeroMD and Certain Cigna Plan Enrollees (against Cigna and AXA).

¶31    Counts VII, VIII, and IX allege tortious interference. The Supreme Court of the Virgin Islands has stated the elements for such claims:

> In the Virgin Islands, there are principally two causes of action for a party's interference with another's contracts. One is interference with existing contracts and the second is interference with prospective business relations. To recover on a claim for interference with existing contracts, a plaintiff must prove: (1) the existence of a contact [sic] between the plaintiff and a third party, (2) the defendant knew of the

---

17.

[84] *Ginsberg*, 572 U.S. at 285.

[85] Pl. AAC-Air Ambulance Caribbean, Inc., d/b/a AeroMD's Resp. in Opp'n to Defs.' Joint Mot. for J. on the Pleadings 17; *Wolens*, 513 U.S. at 229 (footnote omitted) ("A remedy confined to a contract's terms simply holds parties to their agreements—in this instance, to business judgments an airline made public about its rates and services.").

[86] Notably, on January 29, 2024, Cigna submitted an exhibit titled, The Government of the Virgin Islands "Open Access Plus Medical Benefits." Due to lack of further description and authentication, such as with an affidavit, this Court is unable to determine if this document is the "VI Government Plan" as alleged in Count VI, and, if it is, whether it is the entire Plan. Additionally, on October 17, 2024, regarding a separate motion to dismiss, this Court previously held that AeroMD met the notice-pleading standard for these Counts. This Court also highlighted that AeroMD has pled that the Defendants "have waived any purported anti-assignment provisions, have ratified the assignment of benefits to AeroMD, and waived and/or are estopped from using any purported anti-assignment provisions against AeroMD due to Defendants' course of dealing with and statements to AeroMD as an out-of-network provider."

[87] *See RC Hotels (Virgin Islands), Inc. v. Moore*, No. ST-10-CV-209, 2012 WL 13219656, at *4 (V.I. Super. Dec. 14, 2012); *see James v. Guardian Ins. Co.*, 69 V.I. 26, 40 (Super. Ct. 2015).

[88] *See generally Cape Air Int'l*, 53 V.I. at 619 (2010).

*AAC-Air Ambulance Caribbean, Inc., d/b/a AeroMD v. Cigna et al.*
Case No. ST-2023-CV-00267
**Memorandum Opinion and Order**
**Page 14 of 19**

2026 VI SUPER 21U

contract, (3) the defendant interfered with the contract using improper means or with an improper motive, and (4) the plaintiff was damaged as a result of the defendant's interference. To prevail on a claim for interference with prospective contracts, a plaintiff must establish: (1) the existence of a professional business relationship that is reasonably certain to produce an economic benefit for the plaintiff, (2) intentional interference with that relationship by the defendant, (3) which the defendant accomplished through improper means or for an improper purpose, and (4) the defendant's interference damaged the plaintiff. Crucially, the requirements for tortious interference with business relations includes the same elements as interference with existing contracts.[89]

¶32    In the Complaint, for Count VII, in brief, AeroMD states that Defendants have searched for cheaper services and "interfered with AeroMD's reasonable expectation of an economic benefit."[90] "Cigna and AXA's actions have been malicious in that they had no legal justification to interfere with AeroMD's expectation of providing emergency air ambulance services to Cigna Plan enrollees, and concomitantly being reimbursed by Cigna for the provision of such services."[91] AeroMD also claims that "[b]ut for Cigna and AXA's interference, AeroMD had a reasonable probability of providing emergency air ambulance services to multiple Cigna Plan enrollees and being reimbursed by Cigna and GVI for such services."[92]

¶33    For Count VIII (against solely AXA), AeroMD alleges that "AeroMD has an enforceable contract with Cigna pursuant to which AeroMD provides emergency air ambulance services to Cigna Plan enrollees and receives reimbursement for providing such services from Cigna" and that "AXA has full knowledge of this contract."[93] "AXA's interjection into the clinical decision-making process to 'shop' for cheaper services—in the process second-guessing the medical necessity of the emergency air ambulance services for Cigna Plan enrollees—has interfered with AeroMD's reasonable expectation to reap the benefits of its contract with Cigna."[94]

¶34    Similarly, for Count IX (against both AXA and Cigna), AeroMD alleges that "AeroMD has enforceable 'AeroMD Membership Program Contracts' in place with certain individuals in the Virgin Islands, including some Cigna Plan enrollees. Pursuant to these contracts, AeroMD has agreed to provide emergency air ambulance services (along with other services) to contracted individuals who possess qualifying health insurance with air medical transport coverage, in exchange for payment of a membership fee" and that "Cigna and AXA have full knowledge of these contracts."[95] AeroMD states that "Cigna and AXA's conduct has interfered with AeroMD's reasonable expectation to reap the benefits of the AeroMD Membership Program Contracts

---

[89] *Love Peace v. Banco Popular De Puerto Rico*, No. S. CT. CIV. 2019-0057, 2022 WL 374274, at *2 (Feb. 7, 2022) (citation omitted).
[90] Compl. ¶ 138.
[91] Compl. ¶ 139.
[92] Compl. ¶ 140.
[93] Compl. ¶¶ 142–143.
[94] Compl. ¶ 145.
[95] Compl. ¶¶ 149–150.

*AAC-Air Ambulance Caribbean, Inc., d/b/a AeroMD v. Cigna et al.*
Case No. ST-2023-CV-00267
**Memorandum Opinion and Order**
**Page 15 of 19**

2026 VI SUPER 21U

AeroMD has in place with certain Cigna Plan enrollees."[96] AeroMD claims that Cigna and AXA interjected themselves and searched for cheaper air ambulance services, "which inured both to the detriment of Cigna Plan enrollees who had such contracts in place with AeroMD (and who needed immediate transport) and to AeroMD (which reasonably expected to provide the services set forth in such contracts and receive continuing membership fees)."[97] "On information and belief, Cigna and AXA did this to further their own economic interests, seeking to save money in paying for emergency air ambulance services and receiving a percentage of these savings, respectively, at the expense of AeroMD's ability to perform under the AeroMD Membership Program Contracts (and receive continuing membership fees pursuant thereto)."[98]

¶35    Like AeroMD's arguments previously stated, AeroMD claims that Counts VII, VIII, and IX are not preempted because they seek to protect AeroMD's own agreements and do not have an impermissible regulatory effect. For instance, AeroMD cites several cases, including *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.* (regarding defamation claims). In *Taj Mahal*, the Third Circuit (in 1998) stated: "From that standpoint, the proper inquiry is whether a common law tort remedy frustrates deregulation by interfering with competition through public utility-style regulation. When state law does not have a regulatory effect, it is 'too tenuous, remote, or peripheral' to be preempted."[99] The U.S. Court of Appeals for the Third Circuit concluded that plaintiff's defamation claims were not precluded.[100]

> Moreover, preemption is inappropriate in the tort field for an eminently practical reason. As *Wolens* pointed out, the Department of Transportation has neither the authority nor the apparatus required to superintend contract disputes. That observation applies equally to tort disputes. It is significant that Congress retained the savings clause of the predecessor statute, which preserved "the remedies now existing at common law or by statute." . . . Application of state law in these circumstances does not frustrate Congressional intent, nor does it impose a state utility-like regulation on the airlines. We therefore conclude that the plaintiff's suit is simply "too tenuous, remote, or peripheral" to be subject to preemption, even though Delta's statements refer to ticketing, arguably a "service."[101]

¶36    Similarly, AeroMD also cites *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, which included tort claims, including tortious interference claims, pertaining to airline frequent flyer miles and awards. In *Frequent Flyer Depot*, the Court of Appeals of Texas stated:

> Here, although American has brought mostly tort claims, those claims attempt to protect the vitality of its self-imposed obligations: those arising from the AAdvantage® program. American's invoking the benefits and protections of state law to protect its own agreements does not have the same impermissible regulatory

---

[96] Compl. ¶ 152.
[97] Compl. ¶ 151.
[98] Compl. ¶ 151.
[99] *Taj Mahal*, 164 F.3d at 194 (citations omitted).
[100] *Cape Air Int'l*, 53 V.I. at 618.
[101] *Taj Mahal*, 164 F.3d at 194–95.

*AAC-Air Ambulance Caribbean, Inc., d/b/a AeroMD v. Cigna et al.*
Case No. ST-2023-CV-00267
Memorandum Opinion and Order
Page 16 of 19

2026 VI SUPER 21U

effect upon prices, routes, or services that Congress was concerned with in enacting section 41713(b)(1). The Act was intended to pre-empt only those state actions having a regulatory effect upon the airlines rather than to preclude airlines from seeking the benefits and protections of state law to enforce their self-imposed standards, regulations, and contracts.[102]

The court concluded that "American's suit against appellants is not pre-empted by section 41713 of the Act."[103]

¶37    However, the United States Supreme Court in *Rowe v. New Hampshire Motor Transp. Ass'n* clarified that *Morales* determined that "pre-emption occurs at least where state laws have a 'significant impact' related to Congress' deregulatory and pre-emption-related objectives."[104] "*Rowe* stands for the proposition that courts should not imply broad exceptions to the preemption provision for areas of traditional state concern."[105] The Third Circuit has also provided further elaboration in light of the similar preemption provision under the  Federal Aviation Authorization Administration Act of 1994 ("FAAAA").[106]

To assess whether a law has a significant effect on a carrier's prices, routes, or services, courts should consider whether: (1) the law binds a carrier to provide or not provide a particular price, route, or service; (2) the carrier has various avenues to comply with the law; (3) the law creates a patchwork of regulation that erects barriers to entry, imposes tariffs, or restricts the goods a carrier is permitted to transport; and (4) the law existed in one of the jurisdictions Congress determined lacked laws that regulate intrastate prices, routes, or services and thus, by implication, is a law Congress found not to interfere with the FAAAA's deregulatory goal. Other factors may also lead a court to decide that a state law has a significant effect where the law undermines Congress' goal of having competitive market forces dictate prices, routes, or services of motor carriers.[107]

---

[102] *Frequent Flyer Depot,* 281 S.W.3d at 221 (citation omitted).

[103] *Id.* at 222.

[104] *Rowe v. New Hampshire Motor Transp. Ass'n,* 552 U.S. 364, 371, 128 S. Ct. 989, 995, 169 L. Ed. 2d 933 (2008) (citation omitted).

[105] *Brown v. United Air Lines, Inc.,* 656 F. Supp. 2d 244, 252 (D. Mass. 2009).

[106] "Before the Supreme Court's rulings in *Rowe* and *Dan's City,* our Court once framed the inquiry—albeit in the context of whether a defamation claim was preempted under the ADA (a question we answered in the negative, holding that the defamation claim was not preempted)—as whether the law or claim in question would "frustrate[ ] deregulation by interfering with competition through public utility-style regulation." *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.,* 164 F.3d 186, 194 (3d Cir. 1998) (citation omitted). Elaborating on regulation in a "public utility sense" in the context of airline services, our Court said that regulations of "the frequency and scheduling of transportation" and "the selection of markets" are public-utility styled regulations (which would thus be preempted under the ADA), whereas "provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities" are not services in a "public utility sense," and thus could be regulated, for instance through state implementation of a duty to exercise reasonable care, the violation of which could give rise to ordinary tort claims. *Id.* at 193 (quoting *Charas v. Trans World Airlines, Inc.,* 160 F.3d 1259, 1261, 1265-66 (9th Cir. 1998) (en banc) )." *Bedoya v. Am. Eagle Express Inc.,* 914 F.3d 812, 823 n.6 (3d Cir. 2019).

[107] *Id.* at 823 (footnote omitted).

¶38    This Court finds that the circumstances in this case are significantly different from facts in cases cited by AeroMD.[108] This case does not concern matters such as defamation, rewards programs, lost or harmed luggage, or various amenities. Instead, this case largely concerns an air ambulance company allegedly not getting paid sufficient amounts for its provided flight services and being hindered from providing certain further services.[109] Although the elements of the Counts do not mention air carriers or their prices or services, AeroMD seeks regulation of alleged insufficient payments to AeroMD for its services. Such subjects concerning payment and airline competitive market choices are inherently economic, directly relate to rates and services of an airline, and go against Congressional intent behind the ADA. Counts VII, VIII, and IX would frustrate deregulation by interfering with competition through impermissible regulation and would significantly affect the air carrier's prices and services.[110] In other words, preemption is appropriate because the impact on the air carrier's rates and services would likely be significant instead of being "too tenuous, remote, or peripheral."[111] The Federal Aviation Act's saving provision also does not prevent this preemption as the ADA preemption provision was established later on without repealing the saving provision.[112] AeroMD cites many cases pre-dating *Ginsberg*, but *Ginsberg* clarified that state common-law rules fall comfortably within the language of the ADA preemption provision. To the extent that AeroMD seeks to utilize an exception, the Court disagrees that an exception to preemption is appropriate for these specific claims. These claims would go beyond the specific obligations AeroMD, AXA, and Cigna allegedly voluntarily undertook by enlarging them based on state laws, causing an impermissible effect. Counts VII, VIII, and IX are preempted, and Defendants' Joint Motion will be granted as it pertains to Counts VII, VIII, and IX.

### iv. Count X of Prima Facie Tort (against Cigna and AXA) and Count XI of Gross Negligence (against Cigna and AXA).

¶39    In Counts X and XI, AeroMD alleges Prima Facie Tort and Gross Negligence against Defendants. For Count X, as the Superior Court has previously highlighted: "To state a claim for prima facie tort, a plaintiff must allege '(1) an intentional lawful act by defendant; (2) defendant's intent to injure the plaintiff; (3) injury to the plaintiff; and (4) an absence of or insufficient justification for defendant's act.'"[113] For Count X in the Complaint, AeroMD alleges that

---

[108] *Panitch v. Cont'l Airlines*, No. CIV.A. 06-3611JAG, 2008 WL 906240, at *6 n.4 (D.N.J. Mar. 31, 2008) ("The Circuit's conclusion on that claim is also unlike the facts before this Court."); *Adams v. U.S. Airways Grp., Inc.*, 978 F. Supp. 2d 485, 493 (E.D. Pa. 2013) ("The parties dispute the effect of *Taj Mahal's* application to the instant case and whether Plaintiffs' claims are preempted by the Deregulation Act. We initially note that Plaintiffs' claims are ordinary negligence claims, and do not expressly reference a subject preempted by the Deregulation Act. Thus, we will look at the facts underlying Plaintiffs' causes of action to determine whether enforcement of the state claim would have an impermissible effect on Defendants' price, routes or services.").

[109] AeroMD argues that this case mainly concerns patient well-being and safety as the air ambulance services are provided in emergency medical situations. However, while patient safety might be part of this case, this Court views payment by Defendants and past and future services by the air carrier as a primary topic.

[110] *See Rowe*, 552 U.S. at 375.

[111] *Morales*, 504 U.S. at 390.

[112] *Ginsberg*, 572 U.S. at 280.

[113] *Erbey Holding Corp. v. BlackRock Fin. Mgmt., Inc.*, 78 V.I. 206. 289, 2023 VI SUPER 75, ¶ 35 (Super. Ct. 2023), *aff'd in part, rev'd in part*, 2025 VI 25 (Dec. 18, 2025) (citation omitted).

"Defendants' wrongful conduct, as described in this Complaint, was intended to harm AeroMD and had the effect of causing such injury and harm" and that "Defendants have intentionally deprived AeroMD of its legally protected property interests by way of conduct that is generally culpable and unjustifiable under the circumstances."[114]

¶40     For Count XI, the Supreme Court of the Virgin Islands has previously stated that "we conclude that the soundest rule for the Virgin Islands is that to prevail on a claim for gross negligence in the Virgin Islands, a plaintiff must establish that: (1) the defendant owed plaintiff a legal duty of care; (2) the defendant breached that duty in such a way as to demonstrate a wanton, reckless indifference to the risk of injury to plaintiff; (3) and the defendant's breach constituted the proximate cause of (4) damages to plaintiff."[115] In the Complaint, for Count XI, AeroMD alleges: "Defendants' wanton and reckless behavior, as described in this Complaint, demonstrated conscious indifference to AeroMD and its property and had the effect of causing injury and harm to AeroMD" and that "Defendants have intentionally deprived AeroMD of its legally protected property interests by way of its wanton and reckless behavior, which demonstrated conscious indifference under the circumstances."[116]

¶41     However, this Court finds that these claims contain the same issues as many of the other Counts in the Complaint. As the U.S. Court of Appeals for the First Circuit has stated:

> The *Morales* framework "does not permit us to develop broad rules concerning whether certain types of common-law claims are preempted by the ADA." Instead, that framework calls for an individualized assessment of the facts underlying each case to determine whether a particular state-law claim will have a forbidden effect.[117]

¶42     Although Counts X and XI do not expressly mention insufficient payments or airline services of AeroMD, they both allege that AXA and Cigna have "intentionally deprived AeroMD of its legally protected property interest." The Complaint itself describes such property interests to include insufficient payments for AeroMD's services, which is a subject (pertaining to rates, routes, and services) the ADA addresses. For similar reasons as the other Counts, these common law claims are preempted by the ADA as they relate to rates, routes, and services of an air carrier, would significantly impact such rates, routes, and services, and go against Congressional intent.[118] The main exception outlined by *Wolens* is also inapplicable for Counts X and XI as they are not privately ordered obligations voluntarily undertaken. Counts X and XI are preempted by 49 U.S.C.

---

[114] Compl. ¶¶ 157–158.

[115] *Brathwaite v. Xavier*, 71 V.I. 1089, 1111, 2019 VI 26, ¶ 31 (2019), *order clarified*, 2019 VI 1U (Aug. 27, 2019); *Olea v. Virgin Islands Tel. Corp.*, No. ST-16-CV-386, 2018 WL 4904935, at *4 (V.I. Super. Oct. 2, 2018) (citation omitted).

[116] Compl. ¶¶ 161–162.

[117] *Tobin v. Fed. Exp. Corp.*, 775 F.3d 448, 455–56 (1st Cir. 2014) (internal citations omitted).

[118] *Mennella v. Am. Airlines, Inc.*, 824 F. App'x 696 (11th Cir. 2020) ("These cases relied not on the type of state law claim, but on what the state law claim targeted, to determine preemption."); *Tobin*, 775 F.3d at 456 ("So it is here: where the duty of care alleged drills into the core of an air carrier's services and liability for a breach of that duty could effect fundamental changes in the carrier's current or future service offerings, the plaintiff's claims are preempted by the ADA.").

§ 41713(b)(1), and Defendants' Joint Motion will be granted as it pertains to Counts X and XI.

### IV. CONCLUSION

¶43     Based upon the foregoing, Counts III, VII, VIII, IX, X, and XI are preempted by 49 U.S.C. § 41713(b)(1), and Defendants' Joint Motion will be granted in part as there is no material issue of fact to resolve, and Defendants are entitled to judgment as a matter of law on Counts III, VII, VIII, IX, X, and XI. However, Counts V and VI are not preempted, and Defendants' Joint Motion will be denied as it pertains to Counts V and VI.

Accordingly, it is hereby

**ORDERED** that Defendants' Joint Motion and Incorporated Memorandum of Law for Judgment on the Pleadings, filed August 29, 2025, is **GRANTED as to Counts III, VII, VIII, IX, X, and XI** of Plaintiff's Verified Second Amended Complaint; and it is further

**ORDERED** that **Counts III, VII, VIII, IX, X, and XI** of Plaintiff's Verified Second Amended Complaint are **DISMISSED**; and it is further

**ORDERED** that Defendants' Joint Motion and Incorporated Memorandum of Law for Judgment on the Pleadings, filed August 29, 2025, is **DENIED as to Counts V and VI** of Plaintiff's Verified Second Amended Complaint; and it is further

**ORDERED** that a copy of this Memorandum Opinion and Order shall be directed to counsel of record.

DATED: 5/21/26

_____
**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

ATTEST:

**TAMARA CHARLES**
Clerk of the Court

BY: _____
**LATOYA CAMACHO** 5 27 2026
Court Clerk Supervisor